State of Wisconsin, Plaintiff-Respondent,

v.

Esteban M. Gonzalez,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2009AP1249–CR. Oral argument March 8, 2011.
—Decided July 8, 2011.*

2011 WI 63

(Also reported in 802 N.W.2d 454.)

270

272

For the defendant-appellant-petitioner there were briefs and oral argument by *Frank J. Schiro, Kristin Anne Hodorowski,* and *Law Office of Frank Joseph Schiro, LTD.*

For the plaintiff-respondent the cause was argued by *Maura Whelan,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals[1] affirming the judgment of conviction and order denying post-conviction relief of the circuit court for Milwaukee County, Patricia D. McMahon, Judge. The defendant, Esteban M. Gonzalez, was convicted of Count 1, exposing a child to harmful material, contrary to Wis. Stat. § 948.11(2)(a) (2005–06).[2] He was acquitted of Count 2, intentionally causing a child to view sexually explicit conduct, which in the present case was masturbation.

¶ 2. The question presented on review of the conviction of Count 1 is whether the defendant should be granted a new trial because there is a reasonable likelihood that the jury was misled by the jury instruction and applied it in an unconstitutional manner. More specifically, the question presented is whether the defendant has shown there is a reasonable likelihood that the instruction, viewed in the light of the proceedings as a whole, misled the jury into believing that the State need not prove beyond a reasonable doubt that the defendant *knowingly* exhibited the harmful material to the child.[3]

---

[1] *State v. Gonzalez*, 2010 WI App 104, 328 Wis. 2d 182, 789 N.W.2d 365.

[2] Wisconsin Stat. § 948.11(2)(a) (2005–06) defines the crime as follows:

> (2)(a) Whoever, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class I felony if any of the following applies:
>
> 1. The person knows or reasonably should know that the child has not attained the age of 18 years.
>
> 2. The person has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan.

All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[3] The defendant argues that the circuit court made several

¶ 3. We conclude that the jury was not instructed explicitly or implicitly that it had to determine whether the defendant had knowingly exhibited the harmful material to the child, as distinguished from accidentally or unknowingly exhibiting harmful material to the child. The jury instruction did not sufficiently define the first element of the crime, namely, that the State must prove beyond a reasonable doubt that the defendant *knowingly* exhibited the harmful material to the child. Accordingly, we are satisfied that the jury instruction misled the jury into believing that the State did not have the burden of proving beyond a reasonable doubt

erroneous evidentiary rulings. "[E]rroneous evidentiary rulings can, in combination, rise to the level of a due process violation." *Montana v. Egelhoff,* 518 U.S. 37, 53 (1996) (plurality opinion) (quoted with approval in *Michigan v. Bryant,* ___ U.S. ___, 131 S. Ct. 1143, 1162 n.13 (2011).

Because we determine that the misleading jury instruction necessitates a new trial, we do not fully address those arguments.

Nevertheless, we note two erroneous circuit court rulings. First, the circuit court erroneously failed to allow the defendant to present testimony bolstering his character. As the State's brief concedes:

> The circuit court misapplied § 906.08(1)(b). The rule provides that the "truthful character" of a testifying defendant "may be ... supported by evidence in the form of reputation or opinion." ... Thus, [Gonzalez's family members'] opinions about Gonzalez's "truthful character" were admissible.

Second, the circuit court erroneously refused to allow the defendant to make an offer of proof that the defendant offered to take a polygraph examination prior to being represented, believing that the polygraph results would be admissible. The State's brief (citing *State v. Pfaff,* 2004 WI App 31, ¶ 26, 269 Wis. 2d 786, 676 N.W.2d 562) acknowledges the appropriate law: "Although polygraph test results are always inadmissible, an offer to take a polygraph test may be admissible."

that the defendant knowingly exhibited the harmful material to the child. Viewing the jury instruction in light of the proceedings as a whole, we further conclude that the defendant has established a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt and therefore applied the potentially confusing instruction in an unconstitutional manner. We therefore reverse the decision of the court of appeals and remand the cause for a new trial.

I

¶ 4. The defendant was charged with two counts. Count 1 was for exposing a child to harmful material.[4] Count 2 was for intentionally causing a child to view sexually explicit conduct, specifically in the present case, masturbation.[5]

¶ 5. The two counts stem from an incident that occurred on April 24, 2006. The defendant was taking care of his three-and-one-half-year-old daughter in a two-bedroom apartment. It is undisputed that on that evening the defendant masturbated to a pornographic film in the living room of his apartment.

---

[4] Wis. Stat. § 948.11.

[5] Wisconsin Stat. § 948.055 states in full:

(1) Whoever intentionally causes a child who has not attained 18 years of age to view or listen to sexually explicit conduct may be penalized as provided in sub. (2) if the viewing or listening is for the purpose of sexually arousing or gratifying the actor or humiliating or degrading the child.

(2) Whoever violates sub. (1) is guilty of:

(a) A Class F felony if the child has not attained the age of 13 years.

(b) A Class H felony if the child has attained the age of 13 years but has not attained the age of 18 years.

276

¶ 6. Three police officers, two detectives and their lieutenant, and the defendant were the principal trial witnesses.

¶ 7. The officers testified about statements made by the defendant in two interviews on May 1 and 2, 2006.

¶ 8. The State's position at trial was that the defendant admitted to the officers that he was aware that his daughter had entered the living room, and that the defendant, "caught up in the moment," failed to stop his activities, thereby exposing his daughter to the pornographic film and sexually explicit behavior.

¶ 9. The officers testified that the defendant's initial statements to police on May 1, 2006, were exculpatory. The defendant's statements were to the effect that the child was in bed and that, although she may have been out of bed, she did not see him masturbate and did not see the video.

¶ 10. The State presented testimony that at the May 2, 2006, interview the defendant made oral and written statements that were inculpatory. Lieutenant Edwards testified: "[The defendant] had told me that he heard [his daughter] come into the [living] room. He didn't directly look at her, but he knew she was in the room from what he heard." Lieutenant Edwards further testified that "the video was on the television approximately three minutes," "that [the defendant] masturbated during the entire time," and that "the child was in the room during the entire time."

¶ 11. Detective Antreassian testified: "[The defendant] told me that in the evening hours he had been in a recliner in his living room masturbating and he looked out the corner of his eye and he did see his daughter in the room and at the time there was a video

277

playing and he was caught up in the moment and he continued until he did ejaculate and she was in the room."

¶ 12. The persistent theme of the defendant's testimony was that during the initial interviews the detectives repeatedly urged him to admit that he accidentally exposed the child to harmful material, implying that he would be in less trouble if he admitted to an accidental exposure.

¶ 13. At trial, the defendant denied the inculpatory statements and testified that the pretrial statements were given under duress and were coerced. The defendant did not deny that he was watching the video. He did not deny that the video was "harmful material" for the child.

¶ 14. At trial, the defendant denied any knowledge that the child was present in the living room while the video was playing. He claimed that the child was never within his "eyeshot." His testimony suggested that if the child saw the video, the viewing was accidental and without his knowledge.

¶ 15. The defendant testified that on the evening of April 24, 2006, he was taking care of his daughter in his apartment. At approximately 7:00 P.M. he put his daughter to bed. Soon afterward, she got out of bed and came out of her bedroom. The defendant put her back to bed. She then called out to the defendant. He went into her room and tucked her back into bed. A little while later, the defendant heard her bedroom door open, saw the bathroom light go on, and heard his daughter put herself back to bed. At approximately 8:00 to 8:30 P.M., according to the defendant, she came out of the bedroom a fourth time. He yelled at her and told her she needed to go back to bed, and he placed her back in her bed.

¶ 16. Following this, the defendant testified that he was watching television, sitting in his recliner in the living room, and talking to a friend on the computer. The defendant estimated the conversation with the friend lasted an hour. He testified that he then began to play a pornographic video with the sound muted and masturbate.

¶ 17. The defendant testified that approximately 30 seconds after initiating those activities he heard a noise, sat up, and looked around. Seeing nothing and believing the noise to have come from the upstairs neighbor's apartment, the defendant testified he finished masturbating, turned off the video, cleaned himself up, pulled up his pants, and watched a short portion of a recorded television program.

¶ 18. The defendant further testified that he then got up to use the bathroom. He walked around the corner of the living room into the hallway and saw his daughter lying on the floor, hands under her chin, in the doorway of her bedroom. He again scolded her and directed her to go back to bed.

¶ 19. Further facts will be presented in the discussion of the jury instruction.

## II

¶ 20. We turn now to the standard of review an appellate court applies when a challenge is made to a jury instruction.

¶ 21. There are two types of challenges to a jury instruction. One challenges the legal accuracy of the instruction. The other asserts that a legally accurate instruction unconstitutionally misleads the jury.[6]

---

[6] *State v. Burris,* 2011 WI 32, ¶ 44, 333 Wis. 2d 87, 797 N.W.2d 430.

■

¶ 22. When a jury instruction is challenged as not completely and correctly informing the jury of the law applicable to the charge, the challenger has presented a question of law that an appellate court determines independently of the circuit court and court of appeals but benefiting from their analyses.[7]

■

¶ 23. When a jury instruction is challenged as confusing or misleading, such that it is subject to misinterpretation by the jury, a conviction should not be reversed "simply because the jury possibly could have been misled."[8] Rather, an appellate court should order a new trial only if upon review of the instruction the court determines that the defendant has shown that "there is a reasonable likelihood that the jury was misled and therefore applied potentially confusing instructions in an unconstitutional manner."[9]

■

¶ 24. The United States Supreme Court has stated that a new trial is warranted when the defendant carries the burden of establishing that "the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that

[7] *Ferguson*, 317 Wis. 2d 586, ¶ 9.

An erroneous instruction is not necessarily prejudicial error. *State v. Harvey*, 2002 WI 93, ¶ 35, 254 Wis. 2d 442, 647 N.W.2d 189 ("[A]n instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence" (quoted source omitted; emphasis in original).).

[8] *State v. Lohmeier*, 205 Wis. 2d 183, 193, 556 N.W.2d 90 (1996).

[9] *State v. Lohmeier*, 205 Wis. 2d 183, 194, 556 N.W.2d 90 (1996). *See also Burris*, 2011 WI 32, ¶ 49.

relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."[10] A new trial is also warranted when the defendant carries the burden of establishing that there was a reasonable likelihood that the jury applied the instruction in a way that denied the defendant "a meaningful opportunity for consideration by the jury of his defense . . . to the detriment of the defendant's due process rights."[11]

¶ 25. In determining whether there is a reasonable likelihood that the jury was misled and applied the potentially confusing instructions in an unconstitutional manner, an appellate court "should view the jury instructions in light of the proceedings as a whole, instead of viewing a single instruction in artificial isolation."[12]

¶ 26. Because the jury instruction given by the circuit court in the present case relating to Count 1, exposing a child to harmful material, essentially

---

[10] *Burris,* 2011 WI 32, ¶ 48 (quoting *Waddington v. Sarausad,* 555 U.S. 179, 129 S. Ct. 823, 831 (2009)).

"States may not 'deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense.' " *State v. Harvey,* 2002 WI 93, ¶ 19, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Carella v. California,* 491 U.S. 263, 265 (1989)).

[11] *Burris,* 2011 WI 32, ¶ 50 (quoting *State v. Lohmeier,* 205 Wis. 2d 183, 192, 556 N.W.2d 90 (1996)).

"[A] jury applies an instruction in an unconstitutional manner if it believes that such instruction 'precludes consideration of constitutionally relevant evidence.' " *State v. Burris,* 2011 WI 32, ¶ 50 (quoting *Boyde v. California,* 494 U.S. 370, 380 (1990).

[12] *State v. Lohmeier,* 205 Wis. 2d 183, 194, 556 N.W.2d 90 (1996).

tracked the language of the statute and is arguably a correct statement of the law (even if the text regarding the fourth element is not applicable to the present case),[13] we shall consider the defendant's challenge to the jury instruction as challenging the instruction as unconstitutionally confusing or misleading the jury into believing that the State did not have to prove an element of the crime, namely that the defendant *knowingly* exhibited harmful material to the child.[14]

## III

¶ 27. At trial, the circuit court gave the following jury instruction, substantially tracking the language of the statute in regard to the substantive law of exposing a child to harmful material, contrary to Wis. Stat. § 948.11(2)(a):

> Exposing a child to harmful material as defined in 948.11(2)(a) of the criminal code of Wisconsin is committed by one who, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, and has *face-to-face contact with the child before or during* this sale, rental, exhibit, playing, distribution, or loan.

---

[13] *See* ¶¶ 45–61, below.

[14] *State v. Lohmeier,* 205 Wis. 2d 183, 194, 556 N.W.2d 90 (1996).

Were we to consider the defendant's challenge as asserting that the jury instruction was legally incorrect, our analysis would be substantially the same. For the reasons set forth, we would conclude that the instruction was not a correct statement of the law and was prejudicial error. *State v. Harvey,* 2002 WI 93, ¶ 44, 254 Wis. 2d 442, 647 N.W.2d 189.

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt the following four elements: first, that the defendant exhibited or played harmful material to [the child] . . . .

. . . .

The defendant had knowledge of the character and content of the material is the second element. And this requires the defendant knew that the material contained a description, narrative account, or representation of nudity, sexually explicit conduct, sexual excitement, sadomasochistic abuse, physical torture, or brutality.

Third element, [the child] was under the age of 18 years. Fourth element, that the defendant had *face-to-face contact with the child before or during* the exhibition or the playing of the material.

If you are satisfied beyond a reasonable doubt that all four elements of this offense have been proved, you should find the defendant guilty of exposing a child to harmful material as charged in Count 1 of the information (emphasis added).

¶ 28. As we shall explain more fully later, the instruction at issue follows both the text of the statute[15]

---

[15] Wisconsin Stat. § 948.11(2)(a) defines the crime as follows:

(2)(a) Whoever, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class I felony if any of the following applies:

1. The person knows or reasonably should know that the child has not attained the age of 18 years.

2. The person has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan.

283

and the text of pattern criminal Jury Instruction 2142[16] to a substantial extent but deviates from both in an

[16] Pattern criminal jury instruction 2142 reads as follows:

Statutory Definition of the Crime

Exposing a child to harmful material, as defined in § 948.11(2)(a) of the Criminal Code of Wisconsin, is committed by one who, with knowledge of the character and content of material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration and [knows or reasonably should know that the child has not attained the age of 18 years][has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan.]

State's Burden of Proof

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present.

Elements of the Crime That the State Must Prove

1. The defendant (sold) (rented) (exhibited) (played) (distributed) (loaned) harmful material to (name of child).

This does not require that the defendant received any monetary consideration. "Harmful material" means (identify the type of material) of a person or portion of the human body that depicts nudity, sexually explicit conduct, sadomasochistic abuse, physical torture, or brutality, and that is harmful to children.

"Harmful to children" means that quality of any description, narrative account, or representation of nudity, sexually explicit conduct, sexual excitement, sadomasochistic abuse, physical torture, or brutality when it

(1) predominantly appeals to the prurient, shameful or morbid interest of children; and

(2) is patently offensive to prevailing standards in the adult community of Wisconsin as a whole with respect to what is suitable material for children, and

(3) lacks serious literary, artistic, political, scientific, or educational value for children of the age of (name of child), when taken as a whole.

2. The defendant had knowledge of the character and content of the material.

284

important respect. The instruction at issue, unlike the statute or the pattern jury instruction, requires a jury to make a finding regarding the fourth element as described in the jury instruction given. Under the facts of the present case, the circuit court used the incorrect instruction for the fourth element of the crime.

¶ 29. The defendant requested the circuit court to modify the jury instructions regarding the first element.[17] He argued that the jury instruction did not adequately explain the requirement that the exhibition of the harmful material to the child was done *knowingly*, and not accidentally. He suggested that the itali-

---

This requires that the defendant knew that the material contained a description, narrative account, or representation of nudity, sexually explicit conduct, sexual excitement, sadomasochistic abuse, physical torture, or brutality.

3. (Name of child) was under the age of 18 years.

4. The defendant [knew or reasonably should have known that the child was under the age of 18 years][had face-to-face contact with the child before or during the (sale) (rental) (exhibit) (playing) (distribution) (loan)].

Wis JI—Criminal 2142 (footnotes omitted).

[17] The defendant also suggested language relating to the instruction on the fourth element, face-to-face contact. The defendant requested the jury instruction regarding the fourth element of the crime be modified to read as follows (modifications in italics):

4. The defendant had face-to-face contact with the child before or during the exhibition or playing of the material.

*"Face-to-face contact" with the child means that the defendant had "personal contact" or a "personal meeting" with the child sufficient to allow him to determine that his audience is underage, before or during the exhibition or playing of the harmful material. "Face-to-face contact" therefore requires "some interaction between the accused and the child-victim."*

For a discussion of the "face-to-face contact" part of the instruction, see ¶¶ 45–61, below.

cized language shown below be added to the pattern instruction, advising the jury that the defendant had to have *knowingly* exhibited the harmful material to the child:

ELEMENTS OF THE CRIME THAT THE STATE MUST PROVE

1. The defendant *knowingly* exhibited or played harmful material to [the child].

This does not require that the defendant received any monetary consideration.

*"Exhibited" means that the defendant knowingly offered or presented for inspection to a specific minor or minors material defined as harmful to children. "Exhibited" requires a "knowing and affirmative act" by the defendant; which is only satisfied by "affirmative conduct" of the defendant "toward a specific minor." To find that the defendant "exhibited" harmful material, you must be satisfied beyond a reasonable doubt that the defendant targeted harmful material at a specific minor child. If you find that the defendant intended to present the adult video to any audience other than the specific minor child [] in this case then you must find that he did not "exhibit" it to her, for purposes of Count 1.*

¶ 30. The defendant also asked for a jury instruction based on his theory of defense that any exhibition of the harmful material to the child was accidental.[18]

■

¶ 31. A circuit court has broad discretion in determining whether to give a particular jury instruction.[19]

---

[18] The court of appeals ruled that because the defendant's defense of accidental exhibiting "was adequately covered by the other instructions given to the jury, he was not entitled to an accident instruction." *Gonzalez,* 328 Wis. 2d 182, ¶ 17.

[19] *State v. Ferguson,* 2009 WI 50, ¶ 9, 317 Wis. 2d 586, 767 N.W.2d 187.

The circuit court denied the defendant's request for the modified jury instructions, stating that the concept of *knowing* is evident in the context of the total pattern instruction and that the word "exhibit" is not an exotic or difficult word that needs to be described further. The circuit court declared:

> [T]he patterned instruction accurately states what the law is. And we've got four elements, and the concept of knowing is in the context of the four elements. And I think exhibited is not such an exotic term that it needs to be described further. And, in fact, I find that the proposed description is confusing and misleading and not helpful . . . .

¶ 32. As is evident from the circuit court's ruling, the circuit court agreed with the defendant on the basic premise of law that the defendant was advancing: The State has the burden of proving beyond a reasonable doubt that the defendant knowingly exhibited the harmful material to the child. Indeed, the circuit court, the court of appeals,[20] and the State[21] agree with the defendant that the State has the burden of proving beyond a reasonable doubt that the defendant *knowingly* exhibited the harmful material to the child. This court also agrees with the defendant on this legal point.

¶ 33. As the defendant, the circuit court, the court of appeals, the State, and this court know, the supreme court in *State v. Thiel,* 183 Wis. 2d 505, 535, 515 N.W.2d 847 (1994), interpreted Wis. Stat. § 948.11 to mean that "an individual violates [the statute] if he or she, aware

---

[20] *State v. Gonzalez,* 2010 WI App 104, ¶ 11, 328 Wis. 2d 182, 789 N.W.2d 365.

[21] Brief of the Plaintiff-Respondent at 20–22.

of the nature of the material, *knowingly* offers or presents for inspection to a specific minor or minors material defined as harmful to children . . ." (emphasis added).[22]

¶ 34. Wisconsin Stat. § 948.11, construed narrowly as *Thiel* instructs, is the law. The circuit court must instruct the jury according to *that law*.

¶ 35. We conclude, for the following reasons, that the defendant has shown that there is a reasonable

---

[22] In *State v. Thiel*, 183 Wis. 2d 505, 515 N.W.2d 847 (1994), to avoid an unconstitutional, overly broad interpretation of Wis. Stat. § 948.11, the court interpreted the statute to include the concept of "knowingly." When a statute is challenged as unconstitutionally over-broad, the statute can be "saved" by a narrowing and validating judicial interpretation. In *Thiel*, 183 Wis. 2d at 533, the court applied such a narrowing and validating interpretation of Wis. Stat. § 948.11(2), holding that each of the verbs in Wis. Stat. § 948.11(2)(a) and (b)—" 'sell,' 'loan,' 'exhibit,' and 'transfer'—represents a knowing and affirmative act. . . . [T]he language of sec. 948.11 focuses on the affirmative conduct of an individual toward a specific minor or minors. Therefore, an individual violates the statute if he or she, aware of the nature of the material, *knowingly* offers or presents for inspection to a specific minor or minors material defined as harmful to children in sec. 948.11(1)(b)." *Thiel*, 183 Wis. 2d at 535 (emphasis added).

This court reiterated this holding from *Thiel* in applying Wis. Stat. § 948.11 in *State v. Booker*, 2006 WI 79, ¶ 17, 292 Wis. 2d 43, 717 N.W.2d 676.

In considering the concurrence, we reiterate that the court did not rewrite Wis. Stat. § 948.11(2)(a) in *Thiel* and we do not rewrite the statute in the present case. Instead, *Thiel* interpreted § 948.11(2)(a), and we apply Thiel's interpretation of the statute. Thiel's interpretation of the statute is the law, at least until modified either by the legislature through amending the language of the statute or by this court overruling its prior interpretation.

likelihood that the jury instruction misled the jury on whether the State had to prove the defendant acted "knowingly," and therefore the jury applied the instruction in an unconstitutional manner.

¶ 36. First, the jury instruction did not explicitly instruct the jury that the State must prove beyond a reasonable doubt that the defendant knowingly, as opposed to accidentally, exhibited the harmful material to the child. The word "knowingly" does not appear anywhere in the instruction.

¶ 37. Thus, the likelihood of the jury being misled about the State's obligation to prove beyond a reasonable doubt that the defendant "knowingly" exhibited the video to the child is·inherent in the jury instruction given.[23] To avoid misleading the jury, the proceedings as a whole (including the instruction) must clearly show

---

[23] That the instructions were misleading in the present case without use of the word "knowing" does not mean that the instructions given in the present case would necessarily be misleading in another case. Jury instructions must fit the facts of the particular case. *See Burris,* 2011 WI 32, ¶ 64 (recognizing that language approved by the court may raise questions if incorporated in a jury instruction in a case with different facts). The error in the present case is that the statutory language and pattern instructions were not modified to fit the facts of the present case.

The pattern jury instructions promulgated by the Wisconsin Criminal Jury Instructions Committee and the University of Wisconsin Law School explain the function of pattern instructions. The Jury Instruction Committee advises that the pattern instructions may frequently be used without change but "may often have to be modified to fit the needs of the particular case. . . . It is suggested that the comment and the footnotes to the instructions be read fully and carefully before the instruction is used, in order that the user be informed of any conditions prerequisite to its use, alternative materials for particular

that the jury was aware of the State's burden of proving that the defendant's conduct was knowing, not accidental, with regard to exhibiting the material to the child.

¶ 38. Did the proceeding and the jury instruction viewed as a whole so advise the jury? The circuit court and court of appeals answered "Yes." The court of appeals concluded that "[t]he 'exhibited or played harmful material *to*' language of the instruction required a finding by the jury that [the defendant] acted affirmatively [i.e., knowingly]—as opposed to accidentally."[24]

¶ 39. We disagree with the circuit court and court of appeals. We do not perceive the words cited by the court of appeals as instructing the jury that the State had to prove the defendant acted knowingly. As we shall explain further, the words "exhibited or played harmful material to," which the court of appeals relied upon for the clarity of the instruction, are the very words the jury questioned and about which the jurors sought clarification.

¶ 40. Second, the jury instruction did not define the word "exhibit," which the *Thiel* court and the pattern jury instructions define. The *Thiel* court defined the statutory verb "exhibit" in a way that did not constitutionally imperil Wis. Stat. § 948.11. The *Thiel* court presented a legal definition of "exhibit," construing " 'exhibit' to mean 'to offer or present for inspection,' " citing Black's Law Dictionary.[25]

¶ 41. The pattern jury instruction includes a footnote at the verb "exhibit." The footnote states: "In *State*

cases, and of other cautionary information." I Wis JI—Criminal xi (preface to 1962 edition reprinted in current edition).

[24] *State v. Gonzalez,* 2010 WI App 104, ¶ 11, 328 Wis. 2d 182, 789 N.W.2d 365.

[25] *Thiel,* 183 Wis. 2d at 535.

*v. Thiel* . . . the court construed 'exhibit' to mean 'to offer or present for inspection,' emphasizing that, like the other terms in the statute, it 'represents a knowing and affirmative act.' "[26]

¶ 42. The *Thiel* court and the Jury Instruction Committee thought it important and necessary to define the verb "exhibit" to explicitly explain that that word represents a knowing, affirmative act.

¶ 43. In contrast, the jury was given no definition of the word "exhibit." The circuit court determined "exhibit" is not an exotic term and need not be described further. The words "exhibited . . . to" may have been clear to the circuit court and the court of appeals, both of whom had the benefit of the *Thiel* case and the pattern instruction, but they were not clear to the jurors, who did not have the benefit of these legal materials. Even after the jury specifically asked for clarification of the phrase "exhibit to" in the jury instruction,[27] the circuit court did not clarify for the jury that the burden was on the State to prove that the defendant knowingly exhibited the harmful material to the child.

¶ 44. The jury instruction at issue did not define "exhibit," making the instruction susceptible to ambiguity. When we look beyond the instruction to the entire proceedings, we cannot point to anything in the record that assures us that the jury understood that it was required to find that the defendant acted knowingly, as opposed to accidentally.

¶ 45. Third, the jury instruction was confusing and misleading when the circuit court erroneously instructed the jury on the fourth element of the crime. The court instructed the jury that the fourth element of

---

[26] Wis JI—Criminal 2142.

[27] The jury questions are analyzed in further detail below at ¶¶ 62–79.

the crime required that the defendant "had face-to-face contact with the child *before or during* the exhibition or the playing of the material" (emphasis added). This "face-to-face contact" instruction was not the appropriate alternative instruction based on the evidence presented in the instant case.

¶ 46. The fourth element of the crime is that the defendant knows the age of the child. The State's burden of proving this element can be satisfied in one of two alternative ways. The statute and the pattern instructions clearly set forth the alternatives and clearly set forth that the circuit court should instruct on the alternative appropriate to the facts of the case.

¶ 47. The statute makes it a felony to expose a child to harmful material "if any of the following applies: 1. The person knows or reasonably should know that the child has not attained the age of 18 years. 2. The person has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan."

¶ 48. Adhering to the text of the statute, the pattern jury instruction reads as follows: "The defendant [knew or reasonably should have known that the child was under 18 years] [had face-to-face contact with the child before or during the (sale) (rental) (exhibit) (playing) (distribution) (loan)]." The footnote to this part of the pattern jury instruction directs the circuit court that "[t]he alternative supported by the evidence should be selected."

¶ 49. The first alternative, that the defendant knew that the child was under 18 years of age, is supported by the evidence in the present case. The child was the defendant's daughter and she was three-and-one-half years old. The circuit court erred by not giving the jury this alternative instruction.

292

¶ 50. The State acknowledges that the circuit court should have given only this first alternative under the statute and pattern instruction. The circuit court should have instructed the jury that the State had the burden to prove that the defendant knew or should have known that the child was under 18 years old.[28] No such instruction was given.

¶ 51. The second alternative relating to "face-to-face contact" is not appropriate in the present case and is confusing in the context of the present case. The

---

[28] The State's brief asserts that the circuit court instructed the jury on both alternatives and that the face-to-face contact instruction merely imposed an additional burden on the State. According to the State, the error is therefore harmless to the defendant. Brief of Plaintiff-Respondent at 21–22. The State is mistaken that the circuit court gave both alternatives in its instruction on the elements of the crime. It did not.

The circuit court read the information to the jury prior to instructing the jury on the four elements of the crime. The information read to the jury charged both that the defendant knew the child was under 18 years of age and that the defendant had face-to-face contact with the child. The circuit court read the following to the jury from the information: "the information in this case charges the defendant with the crime[] of exposing a child to harmful material"; "the defendant did exhibit to a child with whom the defendant had face-to-face contact"; "the defendant knew or reasonably should have known [that the child] had not attained the age of 18 years."

The circuit court explained the significance of the information to the jury as follows:

> The information in this case charges the defendant with the crimes of exposing a child to harmful material and causing a child under 13 to view sexual activity. . . .
>
> The information is nothing more than a written, formal accusation against a defendant charging the commission of one or more criminal acts. You are not to consider it as evidence against the defendant in any way . . . .

State agrees in its brief to this court that the circuit court erred in giving the "face-to-face contact" instruction in the present case.[29]

■

¶ 52. This second alternative commonly applies to internet transactions and does not apply to the present case.[30] Generally the alternative "face-to-face contact"

---

After reading the information to the jury, the circuit court then went on to instruct the jury about the four elements of the crime. The instruction did not state that one element was that the defendant knew or should have reasonably known the child was under 18 years of age. The fourth element in the instruction stated that the defendant had *face-to-face contact with the child before or during* the exhibition or the playing of the material. The instruction is printed at ¶ 27, above.

[29] Brief of Plaintiff-Respondent at 21–22.

[30] The alternative in the statute and the instruction relating to "face-to-face contact" was added to the instruction in response to changes made to the statute by 2001 Wis. Act 16. The statutory change was made in response to *State v. Weidner,* 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684.

In *Weidner,* the court determined that Wis. Stat. § 948.11(2) was "unconstitutional in the context of the internet and other situations that do not involve face-to-face contact between a minor and the accused" because the statute shifted the burden of proving knowledge of the victim's age to the defendant and infringed upon protected First Amendment expression. *Weidner,* 235 Wis. 2d 306, ¶ 1.

In *Weidner,* the accused was charged under Wis. Stat. § 948.11(2)(a) with sending harmful material to a minor over the internet. The court declared that in situations devoid of face-to-face contact, such as in the context of the internet, the State did not bear the burden to prove scienter; the legislature had shifted the scienter element of Wis. Stat. § 948.11(2)(a) to an affirmative defense, thereby eliminating an element of the crime. *Weidner,* 235 Wis. 2d 306, ¶ 13. In response to *Weidner,* the legislature amended Wis. Stat. § 948.11(2)(a) to ensure the

294

instruction should be used when evidence supports the affirmative defense in Wis. Stat. § 948.11(2)(c) that the defendant had reasonable cause to believe the child had attained the age of 18 years. In the present case, the defendant did not claim the affirmative defense, and no evidence supports an affirmative defense that he had reasonable cause to believe that the child had attained the age of 18 years. The circuit court thus chose the incorrect alternative "face-to-face contact" instruction in the present case.

¶ 53. The State argues that the erroneous "face-to-face contact" instruction just placed an additional burden on the State and did not harm the defendant. The State is wrong.

¶ 54. In the present case, the "face-to-face contact" instruction was misleading when viewed in light of the entire jury instruction and the entire proceedings. Specifically, the "face-to-face contact" instruction was misleading with regard to the crucial element of the defendant's "knowingly" exhibiting harmful material to the child. The jury appears to have interpreted the "face-to-face contact" instruction as interacting with the first element of the crime and requiring the defendant to have face-to-face contact with the child.

¶ 55. Without clarification from the circuit court, the jury was left to its own devices to figure out how the face-to-face contact instruction related to the State's burden of proving the defendant "exhibited material to" the child.

---

State was required to prove beyond a reasonable doubt that the defendant reasonably knew that the child was under the age of 18 or that the defendant had face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan of the harmful material.

¶ 56. The instruction provides that the State must prove that the defendant "had face-to-face contact with the child *before* or *during* this sale, rental, exhibit, playing, distribution, or loan." The defendant's "face-to-face contact" with the child thus could have occurred *before* the playing of the video.

¶ 57. It is reasonably likely that this erroneous "face-to-face contact" instruction misled the jury into thinking that the State did not have to prove that the defendant affirmatively, that is, knowingly, exhibited the harmful material to the child, and instead that the State had to prove only that the defendant had face-to-face contact with the child before exhibiting the video to the child. Clearly the defendant in the present case had face-to-face contact with the child *before* exhibiting or playing the video.

¶ 58. The court of appeals determined that the jury could not reasonably have concluded that face-to-face contact before exhibiting the harmful material was sufficient for purposes of finding the defendant guilty in this case.[31] But, the jury instruction explicitly stated that face-to-face contact with the child *before* the playing of the video satisfied an element of the crime.

¶ 59. The court of appeals explicitly relied on the erroneous "requisite face-to-face contact" instruction to support its conclusion that the "face-to-face contact" instruction was such that "the jury would have had to find that [the defendant] was aware of (i.e., had knowledge of) [the child's] presence in the room."[32] The court of appeals could reach this conclusion only by misreading the "face-to-face contact" instruction to ignore the

---

[31] *State v. Gonzalez,* 328 Wis. 2d 182, ¶ 13.

[32] *Id.,* ¶ 11.

word "before" and to read the instruction as containing only the phrase "face-to-face contact *during* the playing."[33]

¶ 60. In contrast to the court of appeals, we conclude that there is a reasonable likelihood that the "face-to-face contact" instruction, which should not have been given in the present case, misled the jury. The jury was left on its own to figure out the meaning of the erroneous "face-to-face contact" instruction, which under the law related to the fourth element, the defendant's knowledge of the age of the child. Yet, the defendant's knowledge of the child's age was not at question in the proceedings. Under these circumstances, the jury was left to ponder the significance of the State's burden to prove "face-to-face contact."

¶ 61. As the jury questions discussed below suggest, the jury viewed the "face-to-face contact" instruction as relating to the first element of Count 1. The jury's questions suggest that the jurors were mistakenly using the "face-to-face contact" instruction to determine the physical whereabouts of the child in relation to the defendant for purposes of determining whether the defendant "exhibited" the video "to" the child.

¶ 62. Fourth, the jury asked the circuit court questions that demonstrate its confusion about the jury instruction and what was necessary to find the defendant guilty of exposing a child to harmful material. The questions posed show the jury's confusion about key language in the instruction and whether the State had to prove that the defendant "knowingly" played or exhibited harmful material to the child.

¶ 63. Within an hour of the start of deliberations, the jury sent two sets of questions to the circuit court.

[33] *See id.,* ¶ 18.

The first set asked for some exhibits to be sent to the jury room. The second set submitted two questions on the substantive law:

> Q4: Clarify word of exposure for us.
>
> Q5: Clarify statement 'the defendant exhibited or played harmful material *To* [A.G.][the child]'
>
> – what does *to* say? (Emphasis in original.)[34]

¶ 64. The circuit court sent the exhibits to the jury room, as the parties had previously agreed should be done upon the jury's request. The jurors subsequently asked for all of the exhibits and were told by the circuit court that they had all of the exhibits.

¶ 65. The circuit court did not immediately respond in any way to the questions on the substantive law. The circuit court did not immediately communicate with counsel regarding the questions. Approximately an hour after the substantive questions were sent to the circuit court, the clerk of circuit court suggested to counsel they take a lunch break and check in about an hour and a half later.

¶ 66. Defense counsel checked in later with the circuit court as instructed, and the circuit court informed defense counsel that the jury had submitted some questions.

¶ 67. With counsel for both parties present, the circuit court read the jury's questions to counsel and stated that it had "waited to see what they were going to do, and apparently they've asked a couple of times to

---

[34] In addition the jurors asked: "Q3: What do we do about hostility between jurors → aggressive behavior, while we deliberate?" In response to this "hostility" question, the circuit court had lunch delivered and had the bailiffs take the jury for a walk.

298

the bailiffs, 'When will we get an answer to our questions,' so they want an answer . . . ."

¶ 68. After receiving no response to the initial substantive questions for over three hours, the jury further asked the circuit court the following questions:

Q7: Please define face-to-face contact with the child

– proximity??-eye to eye? - in room?

Q8: Same question: on meaning of count 1, part 1, '*exhibited* or *played* harmful material to [the child]'

– need more definition behind exhibited –

– need more definition behind played

– need more definition for the entire statement. (Emphasis in original.)

¶ 69. The parties presented their respective arguments regarding how the circuit court should respond to the original and subsequent substantive questions.

¶ 70. The State asserted that no response was necessary and that at this point the jurors should use their common-sense application of the words in the original instruction.

¶ 71. The defendant contended that his rejected modified jury instructions had been proffered in anticipation of the very confusion that the jury's questions presented. The defendant asked the circuit court to answer the jury's question by re-instructing with the modified jury instructions he had originally offered.

¶ 72. While the parties were presenting their arguments to the circuit court, the jury advised the circuit court that it had reached a verdict. The circuit court did not answer the questions, determining that the questions and answers were now moot.

299

¶ 73. The jury found the defendant guilty of the first count, exposing a child to harmful material, contrary to Wis. Stat. § 943.11(2)(a),[35] and not guilty of the second count, intentionally exposing a child to sexually explicit activity, contrary to Wis. Stat. § 948.055(1)(2)(a).[36]

¶ 74. The jury questions were directed specifically at the language of the first element of Count 1, exposing a child to harmful material. The questions suggest that the jury was struggling with interpreting the scope of the language "exposure," "exhibited to," "played to," and "face-to-face contact." Specifically, the questions raise the issue of whether the defendant had to know that the child was present. The question went to whether the defendant's exhibiting or playing the video to the child had to be done "knowingly." The jury should not have been left to struggle with interpreting the instruction without judicial assistance.

¶ 75. The *Thiel* court interpreted the statutory language to ensure that the statute was not unconstitutionally overbroad. That interpretation requires that an accused "knowingly" exhibit the harmful material to the child. The jury should not have been left to struggle with interpreting the statute when the supreme court had already done so.

¶ 76. Without any modification of the instruction, the jury was left on its own to sort out how to interpret the "exposure," "exhibit to" and "play to" language of the

[35] The jury verdict as to Count 1 reads: "We, the jury, find the defendant, ESTEBAN GONZALEZ, guilty of EXPOSING A CHILD TO HARMFUL MATERIAL, as charged in Count One of the Information."

[36] The jury verdict as to Count 2 reads: "We, the jury, find the defendant, ESTEBAN GONZALEZ, not guilty as to Count Two."

first element of the crime. The very language that the *Thiel* court had to narrowly interpret to ensure the constitutionality of the statute was not explained to the jury, even after it was evident from the jury's questions that the jurors did not clearly understand the instruction.

¶ 77. The jury's questions demonstrate that the instructions initially given by the circuit court were confusing and ambiguous. The court erred in failing to provide the jury with at least some part of the defendant's proffered modified jury instruction[37] so that the jury could understand that accidently exhibiting harmful material to a child is not sufficient to satisfy the first element of the crime charged.

¶ 78. The jury instruction at issue in the present case failed to sufficiently instruct the jury on the meaning of the statutory language under the circumstances of the present case. Reviewing the jury instruction and proceedings as a whole, it is reasonably likely that the jury was misled.

¶ 79. Nothing in the record or the instruction assures us that the jury found the defendant guilty of count 1 after interpreting the instruction to require that the State prove beyond a reasonable doubt that the

---

[37] The defendant's proposed modified jury instructions expressly set forth the "knowing" and "affirmative" aspect of the first element of the crime in several different ways.

Not all of the defendant's modifications to the pattern jury instruction were necessarily correct or were needed to properly instruct the jury. But without any modification of the instruction to explicitly require the State to prove beyond a reasonable doubt that the defendant knowingly exhibited the harmful material to the child, or to provide an instruction relating to an accident theory of defense, there is a reasonable likelihood that the instruction was misleading in the present case.

defendant knowingly exhibited the harmful material to the child. On the basis of the proceedings, the jury could have concluded either that the defendant knowingly exhibited the harmful material to the child or that the defendant accidentally exhibited the harmful material to the child. We do not know the tack the jury took. We do not know how the jury interpreted the misleading jury instructions. Accordingly, we are not confident that the jury necessarily found that the State proved that the defendant "knowingly" exhibited the harmful material to the child.

¶ 80. Fifth, the possibility that the jury was confused or misled about the element of "knowing" in Count 1 is further demonstrated when we examine the jury instruction given for Count 2.

¶ 81. In the substantive instruction on Count 2, the jury was instructed that to find the defendant guilty, the jury must find that the defendant *intentionally* caused the child who had not attained the age of 13 years to view sexually explicit conduct for the purpose of sexual gratification, contrary to Wis. Stat. § 948.055(1),(2)(a). The circuit court instructed the jury as follows:

> This section of the criminal code is violated by a person who *intentionally causes* the child to view or listen to sexually explicit conduct for the purpose of sexually arousing or gratifying the person or humiliating or degrading the child.

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt the following four elements were present: first, the defendant caused [the child] to view or listen to sexually explicit conduct. . . .

> Second element, that the defendant *intentionally caused [the child] to view* or listen to sexually explicit

302

conduct. "Intentionally" requires that the defendant acted with a purpose to cause her to view or listen to sexually explicit conduct. Third, that [the child] had not attained the age of 13 years. . . . Fourth, that the defendant acted with the purpose of sexually arousing or gratifying the defendant or humiliating or degrading [the child] (emphasis added).

¶ 82. Both criminal counts arose out of allegedly simultaneous events: The defendant was accused of intentionally causing the child to view him masturbating as he simultaneously watched and exhibited or played the video. The instruction for Count 2 expressly includes an element of intent. For Count 2, the jury was instructed that an element of the crime was "that the defendant *intentionally* caused [the child] to view or listen to sexually explicit conduct. 'Intentionally' requires that the defendant acted with a purpose to cause her to view or listen to sexually explicit conduct" (emphasis added).

¶ 83. With regard to Count 1, the jury was instructed that the State had to prove only that the defendant exhibited harmful material to the child; the instruction for Count 1 did not include the word "knowing" or "intentional."[38]

---

[38] In the criminal statutes, as well as in ordinary parlance, the words "intentional" and "knowing" denote a state of mind.

Wisconsin Stat. § 939.23(1) provides that "[w]hen criminal intent is an element of a crime in chs. 939 to 951, such intent is indicated by the term 'intentionally', the phrase 'with intent to', the phrase 'with intent that', or some form of the verbs 'know' or 'believe'."

Wisconsin Stat. § 939.23(2) provides that " '[k]now' requires only that the actor believes that the specified fact exists."

Wisconsin Stat. § 939.23(3) defines "intentionally" to include knowledge: " 'Intentionally' means that the actor either

¶ 84. The jurors had the instructions for both Counts 1 and 2 before them. Had the jurors compared the instruction for Count 1 with the instruction for Count 2, they would have found a significant difference between the two. The instruction for Count 2 explicitly requires the State to prove that the defendant intentionally caused the child to view or listen to sexually explicit conduct. Intentionally causing a child to view sexual activity necessarily encompasses knowingly presenting sexual activity to a child.[39] The instruction for Count 1 has no similarly explicit "intention" or "knowing" language.

¶ 85. This difference between the two instructions increases the likelihood that the jury may have interpreted the jury instruction for Count 1 as not requiring the defendant to have knowingly exhibited harmful material to a child.

¶ 86. Viewing the jury instruction for Count 1 in light of the instruction for Count 2 and reviewing the proceedings as a whole, we conclude that there is a reasonable likelihood that the jury was confused and misled about the need for the State to prove an element of the crime.

¶ 87. The jury expressed its confusion regarding the jury instruction related to Count 1, exposing a child to harmful material. The circuit court had an opportunity to rectify the jury instruction. Yet, the circuit court did not respond to the jury's queries.

---

has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result. In addition, except as provided in [§ 939.23] sub. (6), the actor must have knowledge of those facts which are necessary to make his or her conduct criminal and which are set forth after the word 'intentionally'."

[39] Wis. Stat. § 939.23(3), quoted above.

304

¶ 88. We do not know whether the jury interpreted the instruction to require the jury to find that the defendant knowingly exhibited the harmful material to the child or whether the jury interpreted the instruction to allow the jury to find that the defendant's accidental exhibition of the harmful material to the child was sufficient to find guilt. The evidence supports either of these findings. If the jury interpreted the instruction in the latter way, the challenged jury instruction relieved the State of the burden of proving an element of the crime beyond a reasonable doubt, violating the defendant's fundamental constitutional rights.

¶ 89. Accordingly, we reverse the conviction and remand the cause for a new trial.

IV

¶ 90. Finally, we address the circuit court's failure to notify counsel about the questions the jury posed until a substantial amount of time had elapsed.

¶ 91. The defendant complains that the circuit court's "wait and see" approach to the jury's questions violated his constitutional rights to trial by an impartial jury and to be present with counsel at all critical stages of the trial.

■

¶ 92. The defendant does not contest that the circuit court has discretion to determine what, if any, re-instruction is given. The circuit court is vested with discretion in determining the necessity for, the extent of, and the form of any jury re-instruction. *State v. Hubbard,* 2008 WI 92, ¶ 57, 313 Wis. 2d 1, 752 N.W.2d 839. Wisconsin Stat. § 805.13(5) provides that "[a]fter the jury retires, the court may reinstruct the jury as to all or any part of the instructions previously given, or may give supplementary instructions as it deems appropriate."

¶ 93. The defendant contends, however, that a defendant has a right to be present and represented by counsel, so that he may represent his interests in a circuit court's communications with a deliberating jury. The defendant argues that his constitutional right to be present at a critical stage of trial was violated by the circuit court's failure to promptly notify him of the jury's questions. Prompt notice would ensure that the defendant has an opportunity to discuss with the circuit court a possible response to any jury question.

¶ 94. The circuit court's communication with the deliberating jury is a critical stage of the trial.[40] We have not determined whether a circuit court's decision not to respond to a jury question is equivalent to communicating with the deliberating jury such that a decision not to respond constitutes a critical stage of the trial. Because we reverse the decision of the court of appeals and remand for a new trial on the basis of the jury instruction, we need not, and do not, decide whether a circuit court's decision not to respond to a jury question constitutes a critical stage of the trial, or whether the circuit court's delay of two to three hours in advising counsel of the jury's questions violated the defendant's constitutional rights in the present case.

¶ 95. We do, however, recommend that circuit courts apply Principle 15D of the American Bar Association Principles for Juries & Jury Trial as a best practice standard.[41] Principle 15D states as follows:

[40] *State v. Anderson*, 2006 WI 77, ¶¶ 67–69, 291 Wis. 2d 673, 717 N.W.2d 74.

[41] In 2006, the Conference of Chief Justices adopted a resolution encouraging the use of the ABA Principles for Juries

When jurors submit a question during deliberations, the court, in consultation with the parties, should supply a prompt, complete and responsive answer or should explain to the jurors why it cannot do so.[42]

¶ 96. Had this principle been applied in the present case, the jury instruction may have been clarified and the appeal and retrial may not have been needed.

* * * *

¶ 97. We conclude that the jury was not instructed explicitly or implicitly that it had to determine whether the defendant had knowingly exhibited the harmful material to the child, as distinguished from accidentally or unknowingly exhibiting harmful material to the child. The jury instruction did not suffi-

---

and Jury Trials as a best practice standard. The resolution states:

NOW, THEREFORE, BE IT RESOLVED that the Conference of Chief Justices:

1. Encourages state courts to use the ABA Principles for Juries and Jury Trials as the standard against which to evaluate and improve their own jury system policies and procedures;

2. Encourages all state courts to implement procedures and practices consistent with the ABA Principles for Juries and Jury Trials;

3. Encourages state courts to continue to broaden efforts to educate and inform the public about jury service, and to enhance positive attitudes and opinions about jury service; and

4. Supports the continued efforts of the American Bar Association through the Commission on the American Jury Project.

Conference of Chief Justices, *Resolution 14: In Support of the American Bar Association Principles for Juries and Jury Trials* (2006), *available at* http://ccj.ncsc.dni.us/JuryResols.html.

[42] ABA Principles for Juries and Jury Trials Principle 15 is entitled "COURTS AND PARTIES HAVE A DUTY TO FACILITATE EFFECTIVE AND IMPARTIAL DELIBERATIONS."

ciently define the first element of the crime, namely, that the State must prove beyond a reasonable doubt that the defendant *knowingly* exhibited the harmful material to the child. Accordingly, we are satisfied that the jury instruction misled the jury into believing that the State did not have the burden of proving beyond a reasonable doubt that the defendant "knowingly" exhibited the harmful material to the child. Viewing the jury instruction in light of the proceedings as a whole, we further conclude that the defendant has established a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt and therefore applied the potentially confusing instruction in an unconstitutional manner. We therefore reverse the decision of the court of appeals and remand the cause for a new trial.

¶ 98. *By the Court.*—The decision of the court of appeals is reversed and the cause remanded.

¶ 99. DAVID T. PROSSER, J. (*concurring*). Wisconsin Stat. § 948.11 is entitled, in part, "Exposing a child to harmful material." It reads in part:

(2) Criminal Penalties. (a) Whoever, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class I felony if any of the following applies:

1. The person knows or reasonably should know that the child has not attained the age of 18 years.

2. The person has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan.

Wis. Stat. § 948.11(2)(a).

¶ 100. A person looking at this statute might wonder why the statute does not read as follows: "Whoever, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration, is guilty of a Class I felony."

¶ 101. When ch. 948 of the statutes was created in 1988,[1] Wis. Stat. § 948.11(2)(a) did read more simply: "Whoever, with knowledge of the nature of the material, sells, exhibits, transfers or loans to a child any material which is harmful to children, with or without monetary consideration, is guilty of a Class E felony."

¶ 102. The legislature revised the statute and approved the present language in § 948.11(2)(a) and (c) in 2001 in an effort to deal with continuing issues surrounding a defendant's *knowledge* about a child's age.[2] This knowledge factor has always been troubling.

---

[1] *See* 1987 Wis. Act 332, § 55.

[2] *See* 2001 Executive Budget Act, 2001 Wis. Act 16, §§ 3976–3977. The budget provision was derived from 2001 Senate Bill 26, introduced by a bipartisan group of legislators at the request of Attorney General James Doyle. The bill analysis for Senate Bill 26 reads, in part, as follows:

Current law does not require that the state prove that the defendant knew or should have known that the recipient of the material was a child. The law does, however, establish an affirmative defense under which the defendant may avoid criminal liability by proving that he or she reasonably believed that the recipient was 18 years of age or older. In order to prove that he or she reasonably believed the recipient was 18 years of age or older, the defendant must show that the recipient provided the defendant an official document purporting to establish that the recipient was at least 18 years of age.

The Wisconsin supreme court recently ruled that the statute that prohibits exposure of a child to harmful materials is unconstitutional as applied to a defendant who sent harmful material over the Internet to a 17–year-old, and to other instances in which

Defendants have had some form of an affirmative defense involving reasonable mistake of age—a provision now embodied in § 948.11(2)(c)—for at least four decades. *See* Wis. Stat. § 944.25(11)(a) (1971).

¶ 103. Several years ago, the court observed that "[s]ection 948.11 has been somewhat of a 'work in progress' since 1957." *State v. Thiel,* 183 Wis. 2d 505, 534 n.22, 515 N.W.2d 847 (1994). Historically, the major points of contention have been (1) the character of the "harmful material" covered by the statute, and (2) the defendant's knowledge about the child's age. To some extent, both of these issues implicate the defendant's knowledge or state of mind.

---

the defendant does not have face-to-face contact with the recipient. *State v. Weidner,* 235 Wis. 2d 306 (2000). The supreme court found the statute unconstitutional because the statute does not make knowledge of the recipient's age an element of the crime, which the state must prove to obtain a conviction. The supreme court distinguished *Weidner* (in which the defendant transmitted harmful material over the Internet) from instances in which the defendant meets the recipient face-to-face. The supreme court did not disturb a lower court ruling that found the statute constitutional as applied to instances in which the defendant meets the recipient face-to-face, because the face-to-face meeting provides the defendant opportunity to assess the recipient's age.

This bill makes knowledge of the recipient's status as a child an element of the crime only if the defendant does not have face-to-face contact with the child. Under the bill, if the defendant does not have face-to-face contact with the recipient, the state need not prove that the defendant knew or should have known that the recipient was a child. A defendant who has face-to-face contact with the recipient may avoid criminal liability by proving the affirmative defense as modified by the bill. The modified affirmative defense requires that the defendant prove that he or she had reasonable cause to believe that the recipient was at least 18 years of age, but does not require the defendant to prove that the recipient displayed an official document purporting to establish that the recipient was 18 years of age or older.

¶ 104. The present case presents a new issue of mens rea because of a somewhat unusual application of the statute.

¶ 105. The defendant played a pornographic video at night in his apartment at a time when his three-year-old daughter was supposed to be in bed. Apparently, the daughter left her bedroom and entered the room where the video was being shown. Apparently, she saw the video.

¶ 106. The State contends that the defendant admitted to police officers that he was aware that his daughter had entered the living room but he was so preoccupied that he failed to turn off the video. The defendant contests this version of events.

¶ 107. There is no dispute that Wis. Stat. § 948.11(2) requires more than that the defendant purposely played a pornographic video. That is not unlawful. The new issue is what state of mind the defendant had to have with respect to his daughter's seeing the video—the harmful material—to be guilty of the offense.

¶ 108. The defendant argues that the instructions given to the jury were misleading because they could have led the jury to believe that if the child observed the defendant's video being played and the defendant either saw the child *before* the child watched the video, or if the defendant saw the child *during* the time the child was watching the video, he would be guilty even though the child's viewing of the video was inadvertent or accidental. The defendant contends that permitting a jury to convict him because of an accidental viewing by the child would unconstitutionally relieve the State of the burden of proving an affirmative act on his part vis-à–vis the child.

¶ 109. If we ask what state of mind the statute requires for conviction, the question has nothing to do

311

with the age of the child. The question has everything to do with volition or knowledge. Did the defendant have to make a conscious choice to "play" or "exhibit" the video to his daughter? Could the defendant be convicted if he knew that his daughter had begun to watch the video but he did not act immediately to stop the viewing? Is an accidental viewing subject to prosecution?

¶ 110. Chief Justice Abrahamson appears to address these questions by requiring the insertion of the word "knowingly" before all six verbs in the statute, namely, "sells, rents, exhibits, plays, distributes or loans," in future jury instructions. The word "knowingly" is derived from *Thiel,* 183 Wis. 2d at 535, where the court said, in a particular fact situation, that "an individual violates the statute if he or she, aware of the nature of the material, *knowingly* offers or presents for inspection to a specific minor or minors material defined as harmful to children." (Emphasis added.)

¶ 111. There is resistance to this remedy. The word "knowingly" is not contained in the statute. The word has not been picked up and highlighted in the headnotes to the *Thiel* case. It has not been put into the jury instructions over the past 16 years. And the statute has been substantially amended since 1994.

¶ 112. Justice Ziegler contends that a state of mind is implicit in the six verbs—that each verb "represents a knowing and affirmative act." *Thiel,* 183 Wis. 2d at 535. She believes that adding the word "knowingly" to the jury instructions would create mischief. She wants to leave well enough alone.

¶ 113. On the other hand, the record in this case is clear that the jury was confused and wanted guidance. The circuit court did not provide guidance, and the jury was left with an erroneous instruction. The

circuit court would have benefited from discussion and advice from the Wisconsin Criminal Jury Instructions Committee in the jury instructions.

¶ 114. Rather than try to resolve here the issue of mens rea embedded in the first element of the statute involving the words "play" and "exhibit," I would ground a new trial solely on the misleading fourth element employed by the circuit court.

¶ 115. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence.

¶ 116. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I write in concurrence because I, like the lead opinion, conclude that in light of these proceedings as a whole, Gonzalez has met his burden of demonstrating a reasonable likelihood that the jury applied the instruction on Count 1 in a manner that violates the constitution. In particular, Gonzalez has met his burden of demonstrating that the instruction was ambiguous and that there is a reasonable likelihood that the jury applied the instruction in a way that relieved the State of having to prove beyond a reasonable doubt that Gonzalez exhibited or played harmful material to three-year-old A.G. I wish to clarify, however, that the jury instruction on Count 1 was a legally correct statement of the law. I concur to highlight that the lead opinion should not be read as now requiring that the word "knowingly" be added to the first element of the jury instruction on Wis. Stat. § 948.11(2)(a). Indeed, both the pattern jury instruction and the instruction given in this case track the exact language of § 948.11(2)(a). In a different case, under a different set of facts, this identical jury instruction might not pose any constitutional concerns.

## I. ANALYSIS

### A. The jury instruction was a legally correct statement of the law.

¶ 117. The jury instruction on Count 1 tracked the exact language of Wis. Stat. § 948.11(2)(a). Section 948.11(2)(a) provides that a person is guilty of a Class I felony if he or she "with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration" and either (1) "knows or reasonably should know that the child has not attained the age of 18 years" or, alternatively, (2) "has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan."

¶ 118. Likewise, in this case, the circuit court instructed the jury as follows:

> Exposing a child to harmful material, as defined in § 948.11(2)(a) of the Criminal Code of Wisconsin, is committed by one who, with knowledge of the character and content of the material, sells, rents, exhibits, plays, distributes, or loans to a child any harmful material, with or without monetary consideration and has face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan.

The circuit court then broke down the statutory definition into four elements, instructing the jury that the State must prove each element beyond a reasonable doubt:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present.

314

. . . .

1. The defendant exhibited or played harmful material to [A.G.].

. . . .

2. The defendant had knowledge of the character and content of the material.

This requires that the defendant knew that the material contained a description, narrative account, or representation of nudity, sexually explicit conduct, sexual excitement, sadomasochistic abuse, physical torture, or brutality.

3. [A.G.] was under the age of 18 years.

4. The defendant had face-to-face contact with the child before or during the exhibition or playing of the material.

¶ 119. As the lead opinion explains, and I do not dispute, the circuit court erred when it instructed the jury on the fourth element and applied the incorrect alternative under the statute. *See* lead op., ¶¶ 46–52. As I more fully explain in Part B, on the basis of the fourth element, I conclude that Gonzalez has met his burden of demonstrating a reasonable likelihood that the jury applied the legally correct jury instruction in a manner that violates the constitution. *See infra* ¶¶ 130–36.

¶ 120. The fourth element is a means of determining that the defendant knew the child was under the age of 18. *See* lead op., ¶ 46. Under the statute, the State can prove the fourth element in one of two ways: either by proving that the defendant (1) "kn[ew] or reasonably should [have] know[n] that the child ha[d] not attained the age of 18 years" or, alternatively, (2) "ha[d] face-to-face contact with the child before or

315

during the sale, rental, exhibit, playing, distribution, or loan." *See* Wis. Stat. § 948.11(2)(a). In this case, given the fact that A.G. is Gonzalez's daughter, the circuit court should have instructed the jury that the fourth element is satisfied if the defendant "kn[ew] or reasonably should [have] know[n] that [A.G.] ha[d] not attained the age of 18 years." *See* § 948.11(2)(a). The alternative "face-to-face" instruction is inapplicable under the facts of this case. *See* lead op., ¶¶ 51–52; *infra* ¶¶ 130–31.

¶ 121. In spite of the fact that the instruction on the fourth element did not fit the facts of this case, the jury instruction otherwise tracked the exact language of Wis. Stat. § 948.11(2)(a). The lead opinion claims to conclude that the instruction was a legally correct statement of the law. *See* lead op., ¶¶ 26–28. Still, at times, the lead opinion implies that the jury instruction was legally inaccurate because the word "knowingly" was absent from the instruction's first element.[1] That is, the lead opinion implies that the circuit court was required to explicitly instruct the jury that the jury

---

[1] *See, e.g.,* lead op., ¶ 3 ("The jury instruction did not sufficiently define the first element of the crime, namely, that the State must prove beyond a reasonable doubt that the defendant *knowingly* exhibited the harmful material to the child."); *id.,* ¶ 26 n.14 ("For the reasons set forth, we would conclude that the instruction was not a correct statement of the law and was prejudicial error."); *id.,* ¶ 36 (concluding that Gonzalez has met his burden of demonstrating that there is a reasonable likelihood that the jury instruction misled the jury because "the jury instruction did not explicitly instruct the jury that the State must prove beyond a reasonable doubt that the defendant knowingly, as opposed to accidentally, exhibited the harmful material to the child"); *id.,* ¶ 83 ("[T]he instruction for Count 1 did not include the word 'knowing' or 'intentional.' ").

must be satisfied beyond a reasonable doubt that the defendant "*knowingly* exhibited or played harmful material to A.G." In support, the lead opinion relies upon this court's decision in *State v. Thiel,* 183 Wis. 2d 505, 515 N.W.2d 847 (1994). The lead opinion reasons:

> As the defendant, the circuit court, the court of appeals, the State, and this court know, the supreme court in *State v. Thiel,* 183 Wis. 2d 505, 535, 515 N.W.2d 847 (1994), interpreted Wis. Stat. § 948.11 to mean that "an individual violates [the statute] if he or she, aware of the nature of the material, *knowingly* offers or presents for inspection to a specific minor or minors material defined as harmful to children."
>
> Wisconsin Stat. § 948.11, construed narrowly as *Thiel* instructs, is the law. The circuit court must instruct the jury according to *that law.*

Lead op., ¶¶ 33–34 (alteration in original); *see also* lead op., ¶ 75 ("The *Thiel* court interpreted the statutory language to ensure that the statute was not unconstitutionally overbroad. That interpretation requires that an accused 'knowingly' exhibit the harmful material to the child."). The lead opinion misreads *Thiel* when it suggests that the circuit court was required to add the word "knowingly" to the first element of the jury instruction. In so doing, the lead opinion rewrites the statute in a manner that *Thiel* expressly advocated against. I, unlike the lead opinion, am not so willing to usurp the role of the legislature or disregard the precedent that *Thiel* commands.

¶ 122. Our decision in *Thiel* must be understood in context. In that case, the defendant raised a facial constitutional challenge to Wis. Stat. § 948.11, arguing that the statute, as written, is substantially overbroad. 183 Wis. 2d at 518–20. Specifically, the defendant main-

317

tained that the language of § 948.11(2)(a), which provides that a person may not "exhibit" material that is harmful to children, effectively chills legitimate activities protected by the First Amendment—including an adult's right to sell, view, or examine sexually explicit materials deemed harmful to minors. *Id.* at 521. We disagreed, concluding that "[t]he statute properly regulates the dissemination of materials considered to be harmful to minors without unduly burdening the rights of adults to have access to these same materials." *Id.* at 523.

¶ 123. As the *Thiel* court recognized, pursuant to *Ginsberg v. New York,* 390 U.S. 629 (1968), a state may enact a "variable obscenity" statute that prohibits the distribution of sexually explicit materials to children, even though the same materials would not be considered obscene if distributed to an adult. *Thiel,* 183 Wis. 2d at 524–27. At the same time, such statutes must strike a proper balance between a state's compelling interest in protecting children and an adult's First Amendment right to have access to materials not considered obscene for adults. *See id.* at 531 (citing *Am. Booksellers v. Webb,* 919 F.2d 1493 (11th Cir. 1990)). Accordingly, variable obscenity statutes must be narrowly construed and, importantly, *cannot be rewritten* in order to conform to constitutional requirements. *See id.* at 533.

¶ 124. The *Thiel* court concluded that Wis. Stat. § 948.11, *as written,* can be narrowly construed to strike "a proper balance between this state's compelling interest to protect the physical and psychological wellbeing of our youth while not precluding adult access to materials deemed to be harmful to minors though not obscene for adults." *Id.* at 533–34. We reasoned that the language of § 948.11 has been narrowly drafted to only

318

incidentally affect an adult's First Amendment right to view materials not considered obscene for adults. *Id.* at 534. In particular, the language of § 948.11(2)(a), providing that a person may not sell, loan, exhibit, or transfer harmful materials to a child, "focuses upon the affirmative conduct of an individual toward a specific minor or minors." *Id.* at 535. With that being the focus, the statute is "[d]istinct from those cases involving the commercial display of materials to a general, consumer audience." *Id.* A person violates § 948.11 only "if he or she, aware of the nature of the material, knowingly offers or presents for inspection to a specific minor or minors material defined as harmful to children in sec. 948.11(1)(b)." *Id.*

¶ 125. *Thiel* does not stand for the proposition that the word "knowingly" is a requisite of the first element of the jury instruction on Wis. Stat. § 948.11(2)(a). To the contrary, the *Thiel* court concluded that the statute, *as written,* "focuses upon the affirmative conduct of an individual toward a specific minor or minors." *Id.* at 535. Hence, just as the circuit court and court of appeals concluded in the instant case, *see* lead op., ¶ 38, the statute's requirement that a person "sell[], rent[], exhibit[], play[], distribute[], or loan[]" harmful material "to a child" already contemplates knowing and affirmative conduct. The lead opinion rejects this analysis, *see id.,* ¶ 39, and instead, appears to rely on *Thiel* for the proposition that the circuit court was required to explicitly instruct the jury that the jury must be satisfied beyond a reasonable doubt that the defendant "*knowingly* exhibited or played harmful material to A.G." However, such rewriting of § 948.11(2)(a) amounts to judicial legislating and is exactly what the *Thiel* court made clear it could not do. *See* 183 Wis. 2d at 532–33; *see also Heimerl v.*

319

*Ozaukee Cnty.,* 256 Wis. 151, 155, 40 N.W.2d 564 (1949) ("[W]hile a statute should be held valid whenever by any fair interpretation it may be construed to serve a constitutional purpose, courts cannot go beyond the province of legitimate construction to save it, and where the meaning is plain, words cannot be read into it or out of it for the purpose of saving one or other possible alternative.").

¶ 126. In sum, in *Thiel,* this court did not rewrite Wis. Stat. § 948.11(2)(a) and insert the word "knowingly" before the phrase "sells, rents, exhibits, plays, distributes, or loans to a child any harmful material . . . ." Instead, as we parsed the statute, we narrowly construed that existing phrase as one which, as written, already encompasses affirmative conduct towards a specific minor or minors—as opposed to the act of selling, renting, exhibiting, playing, distributing, or loaning the objected to material to an adult or group of adults when it is not known that a minor is part of the group.[2]

¶ 127. Accordingly, both the language of Wis. Stat. § 948.11(2)(a) and this court's decision in *Thiel* lead me to conclude that the jury instruction on Count 1 was a legally correct statement of the law and that the absence of the word "knowingly" from the first element did not render the instruction deficient. In a different case, under a different set of facts, this identical jury instruction might not pose any constitutional concerns.

¶ 128. However, I agree with the lead opinion that in light of these proceedings as a whole, and particu-

---

[2] *See State v. Weidner,* 2000 WI 52, ¶ 20, 235 Wis. 2d 306, 611 N.W.2d 684 (explaining that the *Thiel* court "not[ed] that *the term 'exhibit' contemplates affirmative conduct* to target specific minors rather than a commercial display to a general audience" (emphasis added)).

larly in light of the jury instruction's misapplication of the fourth element, Gonzalez has met his burden of demonstrating a reasonable likelihood that the jury applied the legally correct jury instruction in a manner that violates the constitution.

 B. In light of these proceedings as a whole, Gonzalez has met his burden of demonstrating a reasonable likelihood that the jury applied the jury instruction in a manner that violates the constitution.

¶ 129. A defendant is entitled to a new trial if he or she establishes that " 'there is a reasonable likelihood that the jury applied the challenged [jury] instruction[] in a manner that violates the constitution.' " *State v. Burris,* 2011 WI 32, ¶ 45, 333 Wis. 2d 87, 797 N.W.2d 430 (quoting *State v. Lohmeier,* 205 Wis. 2d 183, 193, 556 N.W.2d 90 (1996)). "[A]n 'especially heavy burden' " is placed upon a defendant "who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad,* 555 U.S. 179, 129 S. Ct. 823, 831 (2009) (quoting *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977)). A defendant meets that burden if he or she " 'show[s] both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.' " *Burris,* 2011 WI 32, ¶ 48 (quoting *Waddington,* 129 S. Ct. at 831). Upon review, we consider the challenged jury instruction "in light of the proceedings as a whole, instead of viewing a single instruction in artificial isolation." *Lohmeier,* 205 Wis. 2d at 194.

¶ 130. In this case, in light of the proceedings as a whole, I agree with the lead opinion that Gonzalez has met his burden of demonstrating that the jury instruc-

tion on Count 1 was ambiguous and that there is a reasonable likelihood that the jury applied the instruction in a way that relieved the State of having to prove beyond a reasonable doubt that Gonzalez exhibited or played harmful material to A.G. *See* lead op., ¶ 78 ("The jury instruction at issue in the present case failed to sufficiently instruct the jury of the meaning of the statutory language *under the circumstances of the present case. Reviewing the jury instruction and proceedings as a whole,* it is reasonably likely that the jury was misled." (Emphasis added.)). Unlike the lead opinion, I do not arrive at that conclusion on the grounds that the jury instruction did not explicitly instruct the jury that it must be satisfied beyond a reasonable doubt that the defendant "knowingly" exhibited or played harmful material to A.G.[3] *See id.,* ¶¶ 36–37. As discussed above, the jury instruction correctly stated the

---

[3] The lead opinion supports its conclusion, in part, by comparing the jury instruction on Count 1 with the jury instruction on Count 2. *See* lead op., ¶¶ 80–86. On Count 2, consistent with the express language of Wis. Stat. § 948.055(1), the circuit court instructed the jury that "[s]ection 948.055 of the Criminal Code of Wisconsin is violated by a person who *intentionally* causes a child to view or listen to sexually explicit conduct for the purpose of sexually arousing or gratifying the person or humiliating or degrading the child." (Emphasis added.) The lead opinion compares that instruction's explicit reference to "intentionally" with the instruction on Count 1, noting that "[t]he instruction for Count 1 has no similarly explicit 'intention' or 'knowing' language." Lead op., ¶ 84. In making such a comparison, the lead opinion makes several false insinuations, including suggesting that the terms "knowingly" and "intentionally" are one and the same. They are not. In the criminal statutes, the terms "knowingly" and "intentionally" have distinct and particularized meanings. *Compare* Wis. Stat. § 939.23(2) *with* § 939.23(3).

law. Instead, I conclude that the jury instruction was ambiguous and that there is a reasonable likelihood that the jury was misled because the instruction misapplied the fourth element of the offense, given the facts of this case.

¶ 131. As mentioned earlier, the circuit court misapplied Wis. Stat. § 948.11(2)(a) when it instructed the jury that it must be satisfied beyond a reasonable doubt that Gonzalez "had face-to-face contact with [A.G.] before or during the exhibition or playing of the [harmful] material." As the lead opinion explains, the instruction on "face-to-face contact" is generally applicable to Internet transactions, in which the defendant may assert the affirmative defense under § 948.11(2)(c)

---

The lead opinion also falsely insinuates that Count 1 and Count 2 are somehow interrelated. A violation of Wis. Stat. § 948.11(2)(a), Count 1, is separate and distinct from a violation of Wis. Stat. § 948.055(1), Count 2. As the jury instructions make explicit, the crimes are comprised of entirely different elements. *Compare* Wis JI—Criminal 2142 *with* Wis JI—Criminal 2125. Notably, a person is guilty of violating Wis. Stat. § 948.055(1) if he or she "intentionally causes a child who has not attained 18 years of age to view or listen to sexually explicit conduct" and does so "for the purpose of sexually arousing or gratifying the actor or humiliating or degrading the child." If the child is under the age of 13, then the actor is guilty of a Class F felony. § 948.055(2)(a). In comparison, neither criminal "intention" nor sexual arousal is an element of Wis. Stat. § 948.11(2)(a). A violation of § 948.11(2)(a) is a Class I felony.

Despite the fact that these two counts "arose out of allegedly simultaneous events," lead op., ¶ 82, it is entirely legitimate for the jury to convict on one and not the other, and I reject the lead opinion's insinuation otherwise. For example, it is possible that the jury could believe that the defendant exhibited or played the pornographic video to A.G. but did not intentionally cause her to view his masturbation for the purpose of sexually arousing him or humiliating her.

323

that he or she "had reasonable cause to believe the child had attained the age of 18 years." *See* lead op., ¶ 52; Wis JI—Criminal 2142A. In such cases, the State bears the burden of proving that the defendant had "face-to-face contact with the child before or during the sale, rental, exhibit, playing, distribution, or loan" of the harmful material and therefore had knowledge of the child's age. § 948.11(2)(a)2.; *see also State v. Weidner*, 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684.

¶ 132. In this case, however, the instruction on "face-to-face contact" was unnecessary because Gonzalez's knowledge of A.G.'s age was not in doubt; A.G. is Gonzalez's daughter. Thus, the circuit court should have instructed the jury that the fourth element is satisfied on the alternative grounds that Gonzalez "kn[ew] or reasonably should [have] know[n] that [A.G.] ha[d] not attained the age of 18 years." *See* Wis. Stat. § 948.11(2)(a).

¶ 133. In a different case, a jury instruction's erroneous application of the instruction on "face-to-face contact" might not rise to the level of a due process violation. However, in this case, in light of the proceedings as a whole, it is reasonably likely that the instruction on "face-to-face contact" misled the jury into believing that the State did not have to prove beyond a reasonable doubt that Gonzalez exhibited or played harmful material to A.G.

¶ 134. By instructing the jury that it must be satisfied beyond a reasonable a doubt that Gonzalez "had face-to-face contact with [A.G.] *before or during* the exhibition or playing of the [harmful] material," the jury instruction may have relieved the State of having to prove that Gonzalez exhibited or played harmful material to A.G. (Emphasis added.) That is, if the jury found that Gonzalez had face-to-face contact with A.G.

*before,* but not during, the exhibition or playing of the harmful material, then it is reasonably likely that the jury did not believe that Gonzalez exhibited or played the harmful material *to A.G.* That likelihood is compounded by defense counsel's closing arguments and the questions submitted by the jury.

¶ 135. In his closing arguments, Gonzalez's counsel repeatedly spoke of "face-to-face" contact in relation to the State having to prove that Gonzalez exhibited or played the pornographic video to A.G.[4]

¶ 136. In addition, the jury specifically asked the circuit court to "[c]larify statement 'the defendant exhibited or played harmful material *To* [A.G.] [the child],' " *see* lead op., ¶ 63, and to define "face-to-face contact with the child," *see id.,* ¶ 68.

¶ 137. I do not pretend to know the jury's thought process or the meaning behind its questions; the court's role is not to invite such speculation. Nonetheless, the lead opinion does much of this. *See id.,* ¶ 74 (speculating that the jury questions "raise the issue of whether the defendant had to know that the child was present" and "went to whether the defendant's exhibiting or playing the video to the child had to be done 'knowingly' "). Still, I am satisfied that, given the closing arguments and the jury questions as they related to the fourth element, it is at least reasonably likely that the jury instruction misled the jury into believing that the

---

[4] For example, Gonzalez's counsel argued that "[t]here is absolutely no evidence that [Gonzalez] intentionally exposed [A.G.] to the video in a face-to-face confrontation or context, which is required by the statute for the first count." Similarly, he argued that Gonzalez's behavior was "consistent with a reasonable parent who would not and has testified [] would not intentionally knowingly exhibit a face-to-face, for their child, a porno movie . . . ."

State did not have to prove beyond a reasonable doubt that Gonzalez exhibited or played harmful material to A.G.

¶ 138. In conclusion, I want to make clear that the jury instruction was a legally correct statement of the law and that the absence of the word "knowingly" from the first element did not render the instruction deficient. In a different case, under a different set of facts, this identical jury instruction might not pose any constitutional concerns. However, I agree with the lead opinion that in light of these proceedings as a whole, Gonzalez has met his burden of demonstrating a reasonable likelihood that the jury applied the legally correct jury instruction in a manner that violates the constitution.

¶ 139. For the foregoing reasons, I respectfully concur.

¶ 140. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.