# STATE of Wisconsin, Plaintiff-Respondent,

v.

# Steven Anthony ROBINSON, Defendant-Appellant.†

Court of Appeals

*No. 87–1535–CR. Submitted on briefs February 2, 1988.—
Decided May 19, 1988.*

(Also reported in 426 N.W.2d 606.)

† Petition to review denied.

For the defendant-appellant, the cause was submitted on the briefs of *Michael Yovovich,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general and *Sally L. Wellman,* assistant attorney general.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Steven Anthony Robinson appeals from a judgment of conviction for first-degree

murder in violation of sec. 940.01, Stats. Robinson raises three issues: (1) whether the trial court misused its discretion when it denied his request for a continuance in order to obtain another attorney and denied his attorney's request to withdraw, thereby denying him due process and a fair trial; (2) whether the trial court's refusal to give a *falsus in uno* instruction denied him a fair trial; and (3) whether the trial court's refusal to strike all of a prosecution witness' testimony or declare a mistrial denied him his constitutional right to confrontation. Because the trial court did not misuse its discretion in denying Robinson a continuance, in denying his attorney's motions to withdraw, in refusing to give a *falsus in uno* instruction, and in refusing to strike all of the witness' testimony or declare a mistrial, we affirm the judgment. Facts pertinent to the disposition of this appeal will be set forth as they relate to the separate issues.

## DENIAL OF CONTINUANCE AND WITHDRAWAL OF ATTORNEY

Robinson first contends that the trial court misused its discretion and thereby denied him due process and a fair trial when it refused to allow his trial counsel to withdraw or to grant a continuance to allow new counsel to be appointed. We disagree.

On the day of trial, Robinson, through his counsel, Dennis Coffey, claimed that he was not prepared to go to trial and therefore desired a continuance. Robinson further stated that he was dissatisfied with his attorney's service and would like new counsel appointed. Coffey then asked that he be relieved of his duties. Coffey did, however, concede that he was prepared to try the case.

In response, the state did not object and stated that it would leave it up to the court to decide whether there was sufficient basis for a continuance or to allow defense counsel to withdraw. In denying the motions, the trial court explained:

> I am going to deny the motions, Mr. Coffey's motion and the Defendant's motion for the following reasons: This matter is hardly being rushed through the system. It's been pending in Court since last fall, early last fall. And there are some pretrial motions filed. This matter has been set for trial in the past. Mr. Coffey is a very skilled and able lawyer. He is not a public defender. Although he was appointed through the public defender's office. He is one of the best criminal defense lawyers in town. And Mr. Robinson, though it may be difficult, I suggest you work with Mr. Coffey. And Mr. Coffey is ready to proceed to trial. I am not going to adjourn this matter. The State is ready to proceed. The Court is ready to proceed. This matter has been set in the past for trial. And we're going to proceed to trial. So both motions are denied.

In support of his motion, Robinson expressed dissatisfaction, distrust and conflict with his counsel. A review of the record, however, belies the legitimacy of this contention. When Robinson made his first request for a continuance to obtain new counsel, he offered no facts lending support to his claim that he was insufficiently informed throughout the pretrial process. Robinson's second attempt to obtain new counsel at midtrial was similarly deficient. Because of the client-attorney privilege, Robinson's counsel would not disclose the nature of the disagreements with him except to say that they involved the jury

277

selection process and failure to file a substitution against the trial judge. Although Coffey attempted to explain to Robinson the court's reasons for its various rulings, Robinson was not satisfied.

At midtrial, Coffey again moved for permission to withdraw, due to a continuing inability to agree with Robinson on tactics. The court again denied the motion, stating that counsel had done an excellent job, performed in an excellent fashion, and doubtless would call to the jury's attention any weaknesses in the state's case. The court found that no cause existed to allow counsel to withdraw.

At the close of the defense's case, Coffey once again requested permission to withdraw because the disagreement continued. Again the trial court denied the motion, declaring satisfaction that Robinson was being represented in an excellent manner and that there was no substantial conflict that would interfere with Coffey's representation of him.

■

We must first decide whether the trial court properly exercised its discretion in denying Coffey's motions to withdraw. The question of whether an appointed counsel should be relieved and another appointed in his place is a matter of trial court discretion. *State v. Haynes,* 118 Wis. 2d 21, 27, 345 N.W.2d 892, 896 (Ct. App. 1984). "[G]ood cause is required to warrant substitution of appointed counsel." *Id.* The trial court concluded that no good cause was shown to warrant withdrawal and we agree.

■

Mere disagreement over trial strategy does not constitute good cause to allow an appointed attorney to withdraw. *See United States v. Calabro,* 467 F.2d 973, 986–87 (2d Cir. 1972), *cert. denied,* 410 U.S. 926

(1973). "In order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* at 986. Although Robinson and his attorney told the court there was a conflict of interest, there never has been any explanation of that conflict. The mere assertion of a conflict of interest without some explanation is not enough for us to conclude that it led to an apparently unjust verdict. The trial court did not misuse its discretion by refusing to allow Coffey to withdraw.[1]

■

We next must decide whether the trial court's denial of a continuance for Robinson to obtain other counsel was appropriate. A balancing test is appropriate to determine whether a trial court has properly exercised its discretion. *Phifer v. State,* 64 Wis. 2d 24, 31, 218 N.W.2d 354, 358 (1974).

> Proper exercise of this discretion requires a delicate balance between the defendant's right to adequate representation of counsel at trial, and the public interest in the prompt and efficient administration of justice. On the one hand, a court may not insist upon expeditiousness for its own sake, but, on the other, a defendant cannot be allowed to insist upon unreasonable delay or inconvenience in the completion of his trial. What is a reasonable delay varies depending upon all the surrounding facts and circumstances.

---

[1]We note that Robinson has not alleged on appeal that any of Coffey's tactical decisions or strategic choices constituted ineffective assistance of counsel or that their relationship was so poor that he was deprived of the effective assistance of counsel.

*Id.* (quoting *Giacalone v. Lucas,* 445 F.2d 1238, 1240 [6th Cir. 1971], *cert. denied,* 405 U.S. 922 [1972]). The factors appropriate for this balancing test are (1) the length of the delay, (2) whether the defendant's counsel has associates ready to try the case, (3) whether there have been other continuances requested and received by the defendant, (4) the inconvenience of those involved, (5) whether the delay is for legitimate reasons or is dilatory and (6) other relevant factors. *Id.*

In the present case, a jury trial had been scheduled and its date was known to Robinson. The request for a continuance to obtain new counsel was not restricted to a certain time period but was solely intended for the purpose of allowing new counsel to be appointed. Coffey had represented Robinson for a period of eight months prior to the request for a change in counsel. He was highly competent, was present in court, was available to defend Robinson and was prepared. Robinson had already had one continuance granted. Furthermore, and most important, there was no explanation of the reasons for wanting new counsel, other than assertions of conflicts of interest and ill-defined assertions of being uninformed by his attorney. Based on the above, we conclude that the trial court's decision to proceed with the trial was not a misuse of discretion.

## *FALSUS IN UNO* INSTRUCTION

Robinson next contends that the trial court's refusal to give a *falsus in uno* instruction denied him a fair trial. We disagree.

The trial court has broad discretion in instructing the jury and we will not find error as long as the instructions adequately cover the applicable law. *State v. Williamson,* 84 Wis. 2d 370, 393, 267 N.W.2d 337, 348 (1978). If the discretionary decisions are the result of a rational mental process and are reasoned and reasonable we will not reverse. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981).

Wis J I—Criminal 305, the *falsus in uno* instruction, provides as follows:

> If you become satisfied beyond a reasonable doubt from the evidence in this case that any witness has, on this trial, wilfully testified falsely as to any material fact, you are at liberty, in your discretion, to disregard all the testimony of such witness except insofar as you find it corroborated by other evidence that is credible.

For this instruction to be appropriate the false testimony must relate to a material fact and must have been wilfully and intentionally made. *Williamson,* 84 Wis. 2d at 394, 267 N.W.2d at 348. The use of a *falsus in uno* instruction has generally fallen into disfavor. Nevertheless, its application is not foreclosed if the appropriate circumstances are present. *See id.* at 394–95, 267 N.W.2d at 348–49. "Mere discrepancies in the testimony that are most likely attributed to defects of memory or mistake are no basis for rejecting a witness's testimony entirely." *Id.* at 394, 267 N.W.2d at 348.

In an earlier case, *Pumorlo v. City of Merrill,* 125 Wis. 102, 103 N.W. 464 (1905), our supreme court

declared that the *falsus in uno* instruction should be given only if the trial court finds

> something either in the appearance, demeanor, or manner of a witness while testifying, or such a conflict or contradiction between him and the other witnesses in the case, or such an inherent incredibility in the facts testified to by him, as would reasonably tend to show that the witness willfully swore falsely.

*Id.* at 111, 103 N.W. at 467. Because the trial court has the benefit of observing the actual testimony of all of the witnesses, its determination ought to be given much weight. *Id.*

The basis for Robinson's contention is that the testimony of the four witnesses to the actual shooting demonstrates that they saw substantially different events. Additionally, Robinson claims that two of the witnesses, Steven Phillips and Anthony Ray Phillips, lied about their names, backgrounds and occupations, and that Anthony had lied about administering CPR to the victim.

We have reviewed the record, particularly those portions related to the four witnesses. From this review, we conclude that some of the alleged inconsistencies are only apparently inconsistent, while the balance can be attributed to "honest mistakes, due to faulty observation, imperfect recollection, or mistaken impressions of facts." *See id.* As for the falsehoods attributed to Steven Phillips and Anthony Ray Phillips, since they relate to information not germane to the shooting, we conclude that they were immaterial to the central issues at trial.

■ An appellate court must consider the instructions as a whole. *State v. Johnson,* 135 Wis. 2d 453, 466–67, 400 N.W.2d 502, 508 (Ct. App. 1986). Before evidence was received and at the close of the trial, the trial court instructed the jury on how to assess the credibility and determine the weight to be given to the testimony of each witness. Under the circumstances, the instructions more than adequately covered the question of the witnesses' credibility. Because the instructions covered the applicable law and the evidence did not warrant the *falsus in uno* instruction, Robinson was not denied a fair trial by the court's refusal to give the requested instruction.

## RIGHT TO CONFRONTATION

Lastly, Robinson contends that the trial court violated his constitutional right to confrontation when it denied a motion to strike all of the testimony of a state's witness, Louis "Willie" Young, or to declare a mistrial. Robinson also argues that the trial court's refusal to let defense counsel explore Young's motive and bias before the jury denied him his constitutional right to confrontation. Robinson, however, has not demonstrated how the court's decision to hear Young's testimony outside of the presence of the jury before ruling on its admissibility was error.[2]

---

[2]During redirect, the state asked Young whether he had been promised or threatened in any way to induce him to testify. Young answered no. Coffey then wanted to cross-examine the witness concerning an alleged incident which happened within the last month. The court decided that Coffey should pose the questions out of the presence of the jury and the court would decide whether it was appropriate for the jury to hear. Coffey proceeded, as an offer of proof, to ask Young about a recent incident involving a

Young, the owner of an after-hours club where the May 4, 1985, shooting occurred, testified that he did not witness the shooting, but observed Robinson coming out of the club immediately thereafter. Young observed that Robinson had a gun in his hand and told him "I tried to kill the son of a bitch." Young also admitted he had been convicted of five or six crimes.

On cross-examination, Coffey was able to question Young about the nature of each conviction. Two of the crimes had involved the same after-hours club. Young admitted that he had continued to run the same after-hours club, intermittently opening and closing it every five or six months. The most recent opening occurred within four months of Robinson's trial. He testified that the shooting on May 4 did not cause any citation or charges to be filed against him for operating after-hours. Although he closed the club after the May 4 shooting, he later reopened it, but didn't inform the police of his actions.

As a further defense, Coffey desired to ask Young some additional questions relating to his bias and motivation. The court allowed Coffey to ask these

shooting at his after-hours club at which the police appeared and questioned Young. To most of these questions, Young took the fifth amendment. After the offer of proof was made, Coffey stated that "At this time in light of the Offer of Proof; obviously I cannot call Mr. Young back on Re-Cross asking him the questions that I would ask ... ." We cannot construe the court's decision to hear the testimony outside of the presence of the jury as error. The reason that Young could not be cross-examined before the jury was because he took the fifth amendment, not because the court specifically refused to allow in such testimony. Because the witness took the fifth amendment the issue was not whether the court should allow the cross-examination but whether the taking of the fifth amendment was on a critical issue requiring the striking of all of the witness' testimony.

questions out of the jury's presence. The court stated that "if [Young] had been promised something based upon what happened in the last month in an after-hours place, it might affect his bias or prejudice at that point." During the offer of proof, Young asserted his right to his fifth amendment protection against self incrimination when he was asked to respond to (1) whether, within the last month before the trial, the police had come to his club because there was another shooting incident; (2) whether he had told the police he was involved in the shooting; and (3) whether police officers had come to his club to investigate another matter. Young did respond affirmatively when asked if he was questioned by police concerning a second shooting incident.

Coffey maintained that because he could not ask Young the proffered question in the presence of the jury knowing that he would plead the fifth amendment, the court ought to strike all of Young's testimony. The court, however, denied this motion to strike. In denying Robinson's motion, the trial court ruled that the proffered testimony was not highly material, or was not material and relevant, and therefore its exclusion would not prejudice Robinson. In so concluding, the court determined that the testimony would be peripheral to the issues and that there was sufficient evidence in the record to demonstrate the state's knowledge that Young was running an after-hours club and participating in an illegal distribution of alcohol, and that he was carrying on a place of gambling without being prosecuted. Thus, Robinson would be able to argue to the jury the issues of bias and improper motivation. The court also denied the motion for a mistrial for the same reasons.

The trial court has the discretion to strike the testimony of a witness who has refused to answer questions on cross-examination.[3] *Peters v. State,* 70 Wis. 2d 22, 35, 233 N.W.2d 420, 427 (1975). The decision depends upon whether the unanswered questions are relevant and material to the subject matter of the inquiry. *Id.*

The trial court properly ruled that Young's testimony should not be stricken. The unanswered questions were peripheral to the May 5th shooting and would not show any further potential for bias than that which had already been demonstrated. Therefore, Robinson's argument that he was somehow prejudiced by the lack of evidence of the witness' bias is not persuasive. Where a witness refuses to answer certain questions on fifth amendment grounds, a defendant's right to confrontation is not violated when the record shows that the witness' credibility was adequately tested. *West v. State,* 74 Wis. 2d 390, 402–03, 246 N.W.2d 675, 682 (1976). Since the jury was already informed as to Young's illegal operation and potential for bias, the additional questions which he refused to answer would only be cumulative as to bias and peripheral to the shooting incident. Based on the above, the trial court's refusal to strike all of Young's testimony or to declare a mistrial was not error.

*By the Court.*—Judgment affirmed.

[3]The trial court's decision to deny a mistrial is also discretionary and will not be reversed unless there is a clear misuse of discretion. *Haskins v. State,* 97 Wis. 2d 408, 419, 294 N.W.2d 25, 33 (1980).