COURT OF APPEALS
DECISION
DATED AND FILED

January 31, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP505-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF3748

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JONATHAN LAMAR HUMPHREY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Jonathan Lamar Humphrey appeals from a judgment of conviction for homicide by negligent handling of a dangerous weapon and an order of the trial court denying his motion for postconviction relief. On appeal, Humphrey argues that he is entitled to a new trial because of an error in the jury instruction that he maintains failed to correctly inform the jury of the State's burden to disprove self-defense as it related to the charge for which he was convicted. From this alleged error in the jury instructions, he raises several claims, including that he is entitled to a new trial on the basis of ineffective assistance of counsel, plain error, and the interest of justice.

¶2      We disagree, and we conclude that there was no error in the jury instruction when the instructions are viewed as a whole. Thus, for the reasons set forth below, we reject Humphrey's claims and affirm.

## BACKGROUND

¶3      Humphrey was charged with one count of first-degree reckless homicide for the shooting death of his nephew, Tucker.[1] The case proceeded to a jury trial on the charge of first-degree reckless homicide, as well as two lesser-included charges of second-degree reckless homicide and homicide by negligent handling of a dangerous weapon. The jury found Humphrey guilty of the lesser-included charge of homicide by negligent handling of a dangerous weapon, and Humphrey was sentenced to six years of imprisonment, composed of four years of initial confinement and two years of extended supervision.

---

[1] We refer to the victim and his twin brother in this case using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4 At trial, Humphrey and other witnesses testified that Humphrey's niece called him on the night of the shooting and told Humphrey that her twin brothers, Tucker and David, had an argument with their grandmother—Humphrey's mother.[2] Humphrey drove over to his mother's house to assist, but by the time Humphrey arrived, the boys had packed their bags and left. On his way back to his own house, Humphrey saw the boys walking with their bags, and he began arguing with them in the street and asking what they had said to their grandmother. Tucker threatened to fight Humphrey, and Humphrey fired two warning shots into the air. David ran away, but Tucker approached Humphrey in his vehicle and struck him in the head.[3] Humphrey testified that he was holding his gun when Tucker struck him, and his gun discharged as he raised his hands to block Tucker from hitting him. After the shots were fired, Humphrey called police and administered CPR until the police arrived. Humphrey left the scene after the police arrived, but he turned himself in the following morning.

¶5 Additional witnesses who testified at the trial indicated that they heard multiple gunshots that night. Several witnesses described hearing a couple of gunshots, followed by a pause, and then followed by up to four additional gunshots.

¶6 Humphrey argued at trial both that he fired the gun accidentally and that he acted in self-defense when he shot his nephew. Related to his argument of self-defense, he testified that he feared what his nephews might do to him that

---

[2] Humphrey's niece, Tucker, and David lived with their grandmother—Humphrey's mother—since the time that they were about two or three years old.

[3] Police testimony confirmed that Humphrey indeed had a head injury when Humphrey turned himself into the police the day after the shooting.

night, and he believed Tucker intended to cause him great bodily harm. As explained at trial, Humphrey was aware that the boys had been diagnosed with ADHD and had a history of violent behavior. Their grandmother, who was raising them, had previously sought help from male family members, including Humphrey, and in one incident described at trial, the boys beat their grandmother's brother with a shovel until the shovel broke. Tucker had also caused $3,000 worth of property damage by throwing rocks at the windows of his school, and he had also been expelled from school after stealing money from the school administrator.

¶7 At the end of the trial, the trial court instructed the jury generally that "[d]efendants are not required to prove their innocence" and "[t]he burden of establishing every fact necessary to constitute guilt is upon the State." The trial court then proceeded to instruct the jury that there were three offenses presented for the jury's consideration—first-degree reckless homicide, second-degree reckless homicide, and homicide by negligent handling of a dangerous weapon—and the trial court provided a brief overview of the elements of each offense.

¶8 The trial court then instructed the jury on self-defense in relevant part as follows:

> Self-defense is an issue in this case. In deciding whether the defendant's conduct was criminally reckless conduct which showed utter disregard for human life or was criminally reckless conduct or was criminally negligent conduct, you should also consider whether the defendant acted lawfully in self-defense. The law of self-defense allows the defendant to threaten or intentionally use force against another only if the defendant believed that there was an actual or imminent unlawful interference with the defendant's person and the defendant believed that the amount of force that the defendant used or threatened to use was necessary to prevent or terminate the interference and the defendant's beliefs were reasonable.

>        The defendant may intentionally use force which is intended or likely to cause death or great bodily harm only if the defendant reasonably believed that that force was necessary to prevent imminent death or great bodily harm to himself.
>
>        A belief may be reasonable even though mistaken. In determining whether the defendant's beliefs were reasonable, the standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of the defendant's acts and not from the viewpoint of the jury now.

¶9       The trial court then instructed the jury in more detail on the elements for first-degree reckless homicide and proceeded to incorporate additional instruction regarding self-defense into the elements of first-degree reckless homicide as follows:

>        You should consider the evidence relating to self-defense in deciding whether the defendant's conduct created an unreasonable risk to another. If the defendant was acting lawfully in self-defense, his conduct did not create an unreasonable risk to another person. The burden is on the State to prove beyond a reasonable doubt that the defendant did not act lawfully in self-defense. And you must be satisfied beyond a reasonable doubt from all the evidence that the risk was unreasonable.
>
>        ….
>
>        You should consider the evidence relating to self-defense in deciding whether or not the defendant's conduct showed utter disregard for human life. The burden is on the State to prove beyond a reasonable doubt that the defendant did not act lawfully in self-defense. And you must be satisfied beyond a reasonable doubt from all the evidence in the case that the circumstances of the defendant's conduct showed utter disregard for human life.

¶10      Following the instruction on the elements of first-degree reckless homicide, the trial court instructed the jury on the elements of the lesser-included

offenses of second-degree reckless homicide and homicide by negligent handling of a dangerous weapon. The court did not repeat the self-defense jury instruction when instructing the jury on the lesser-included offenses. The trial court also provided an accident instruction and an additional instruction on a defendant's duty to retreat as it relates to any action taken in self-defense.

¶11 During its deliberations, the jury asked two questions. In the second question, the jury requested a more descriptive definition for criminal negligence. After conferring with the State and the defense, the trial court responded to the jury that it should revisit the instructions that were already given. The jury did not ask any follow up questions, and ultimately, returned the guilty verdict for homicide by negligent handling of a dangerous weapon.

¶12 Humphrey filed a motion for postconviction relief in which he argued that he was entitled to a new trial because the jury was not properly instructed on the State's burden of proof as it related to Humphrey's defense of self-defense and the crime for which he was convicted. The trial court denied his motion and found that, under *State v. Langlois*, 2018 WI 73, 382 Wis. 2d 414, 913 N.W.2d 812, the jury instructions, when viewed as a whole, properly informed the jury of the State's burden of proof.

¶13 In a written decision, the trial court stated:

> Similarly, while the court in this case did not repeat the self-defense/burden of proof instruction when instructing the jury on the lesser included offenses, the court instructed the jury at the outset that self-defense applied to the charged offense and to the lesser included offenses. … The court also instructed the jury that before it could find the defendant guilty of the charged offense— first degree reckless homicide—it had to consider whether the defendant acted in self-defense and that it was the State's burden to disprove the defendant's self-defense claim beyond a reasonable doubt. The lesser included

6

offense of second degree reckless homicide differed from the charged offense only in that it did not require the State to prove that the defendant acted with utter disregard for human life. Too, on the lesser included offense of criminal negligence, *Langlois* reasoned that an additional instruction on the State's burden of proof was unnecessary[.]

¶14     Humphrey now appeals.

## DISCUSSION

¶15     On appeal, Humphrey renews his argument that the self-defense instruction given to the jury was erroneous and failed to properly inform the jury of the State's burden to disprove self-defense as it related to the charge for which he was convicted. He further argues that, as a result of this alleged error in the instruction, he is entitled to a new trial on the grounds of ineffective assistance of counsel, plain error, and in the interest of justice.[4] We disagree, and we conclude that the jury instruction, when viewed as a whole, properly informed the jury of the State's burden of proof. Consequently, we reject Humphrey's arguments that he is entitled to a new trial.[5]

¶16     "A [trial] court … has broad discretion in instructing a jury. A [trial] court appropriately exercises its discretion in administering a jury instruction so

---

[4] We note that Humphrey cites WIS. STAT. § 751.06 as authority for this court to grant a new trial in the interest of justice. However, § 751.06 grants our supreme court the power of discretionary reversal. The court of appeals is granted the power of discretionary reversal in WIS. STAT. § 752.35.

[5] Humphrey additionally pursues an argument that the decision in *State v. Langlois*, 2018 WI 73, 382 Wis. 2d 414, 913 N.W.2d 812, "was in error when it characterized the privilege of self-defense as a 'negative defense.'" He makes this argument recognizing that this court is unable to provide the remedy he seeks. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case."). Thus, we do not address his argument on this point further.

long as the instructions as a whole correctly stat[e] the law and compor[t] with the facts of the case." *Langlois*, 382 Wis. 2d 414, ¶34 (alterations in original; citation omitted). We review *de novo* whether a jury instruction correctly states the law. *Id.* "[W]e will not find error as long as the instructions adequately cover the applicable law." *State v. Robinson*, 145 Wis. 2d 273, 281, 426 N.W.2d 606 (Ct. App. 1988).

¶17    Humphrey argues in particular that self-defense should have been incorporated and integrated into the instruction for homicide by negligent handling of a dangerous weapon. In making this argument, he points to both the comments to WIS JI—CRIMINAL 801 and the comments to WIS JI—CRIMINAL 1023. The first recommends "integrat[ing]" an instruction on self-defense into the elements of the crime, WIS JI—CRIMINAL 801 n.1, and the second provides that it is "preferable to repeat the full statement of the burden of proof with each of the lesser included offenses," WIS JI—CRIMINAL 1023 cmt. While the trial court could have followed the recommendations provided in these jury instructions, we conclude that the jury instructions in this case, when viewed as a whole, still correctly instructed the jury that self-defense applied to the lesser-included charge of homicide by negligent handling of a dangerous weapon and that the State bore the burden to disprove the defense as it relates to this crime. In this regard, we find *Langlois* instructive.

¶18    Similar to the instructions provided in *Langlois*, the trial court here provided an accurate instruction on self-defense prior to instructing the jury on the elements of the crimes for which Humphrey was on trial. Within that instruction, the trial court clearly stated that "[s]elf-defense is an issue in this case. In deciding whether the defendant's conduct was criminally reckless conduct which showed utter disregard for human life or was criminally reckless conduct or was criminally

negligent conduct, you should also consider whether the defendant acted lawfully in self-defense." As did the court in *Langlois*, we conclude that "[t]herefore, the jury was aware that the initial instruction it was receiving applied to the case generally and to criminally negligent conduct specifically." *See Langlois*, 382 Wis. 2d 414, ¶43.

¶19 Additionally, the trial court here, at the outset of the instructions, also correctly instructed the jury that "[d]efendants are not required to prove their innocence" and "[t]he burden of establishing every fact necessary to constitute guilt is upon the State." The trial court also twice indicated that the State bore the burden of disproving self-defense during the instructions. The court stated in *Langlois*, "Because self-defense is a negative defense, the State disproves self-defense beyond a reasonable doubt if it proves the elements of the crime beyond a reasonable doubt, specifically criminal negligence." *See id.*, 382 Wis. 2d 414, ¶45. The court further stated, "Therefore, the jury was aware that the State had to prove criminal negligence—the element that self-defense would negate—beyond a reasonable doubt." *Id.* Thus, as in *Langlois*, the jury here was aware that the State bore the burden to prove the elements of homicide by negligent handling of a dangerous weapon and proof of those elements would negate any self-defense.

¶20 Last, we conclude that, any argument that the jury failed to understand that Humphrey's defense of self-defense applied to the lesser-included charge of homicide by negligent handling of a dangerous weapon also fails. In *Langlois*, Langlois argued that it was evident that the jury instruction was erroneous because the jury found him not guilty on the two counts for first and second-degree reckless homicide where the self-defense instruction included the State's burden, but guilty on the lesser-included charge of negligent homicide where the State's burden was not restated. *See id.*, ¶46. The court noted that

9

Langlois believed that, therefore, the lack of reiteration of the State's burden is the reason that the jury found him guilty of negligent homicide. *See id.* The court concluded that "[t]his argument fails." *Id.* It then stated that "the circuit court did not repeat the accident or self-defense instructions for the second-degree reckless homicide, but the jury still found Langlois not guilty of that offense." *Id.*

¶21 Similar to *Langlois*, the trial court here did not incorporate any instruction on self-defense into the instruction providing the elements of the lesser-included offense of second-degree reckless homicide. *See id.* Yet, the jury here still did not find Humphrey guilty of that lesser-included offense of second-degree reckless homicide. We will not infer error in the instructions because the jury did not find Humphrey guilty of the lesser-included offense of second-degree reckless homicide but did find him guilty of the lesser-included offense of homicide by negligent handling of a dangerous weapon. *See id.*

¶22 Thus, viewing the jury instructions as a whole, we conclude that the jury was properly informed that the State bore the burden in this case and that Humphrey's defense of self-defense applied to the lesser-included charge of homicide by negligent handling of a dangerous weapon. "[T]he context provided by the prior instruction and the general instructions clearly convey that the State bore the burden to disprove self-defense." *See id.*, ¶47.

¶23 Relying on *State v. Gonzalez*, 2011 WI 63, 335 Wis. 2d 270, 802 N.W.2d 454, Humphrey additionally argues that the error in the instruction was compounded by the trial court's response to the jury's question to review WIS JI—CRIMINAL 1023, the substantive instruction containing the elements of the crime,

omitted any guidance that self-defense applied to homicide by negligent handling of a dangerous weapon.[6]

¶24 We disagree because the jury's question had nothing to do with self-defense, its application to homicide by negligent handling of a dangerous weapon, or the State's burden to disprove self-defense. Rather, the jury's question dealt with confusion over the definition of criminal negligence, an element of the crime of homicide by negligent handling of a dangerous weapon. A reminder to review WIS JI—CRIMINAL 1023, where criminal negligence is specifically defined as an element of the crime, was an appropriate response to the jury's question.

¶25 Nevertheless, Humphrey argues that *Gonzalez* is "particularly relevant because the instructions error there arose from the trial court's mishandling of its response to the jury's requests for clarification." We are not persuaded. The court in *Gonzalez* relied on several shortcomings in the jury instructions in reaching its conclusion and did not rely solely on the trial court's lack of a response to the jury's questions during deliberations. *See id.*, 335 Wis. 2d 270, ¶62 (listing the jury's questions during deliberations as the fourth reason the instructions were misleading). Moreover, unlike the trial court in *Gonzalez*, which provided absolutely no response to the jury's questions, *id.*, ¶72, the trial court in Humphrey's case did. Thus, we are not persuaded that *Gonzalez* compels a conclusion that the jury instructions in this case were erroneous.

---

[6] In arguing that an error in the jury instruction requires reversal, Humphrey further cites to *State v. Altenburg*, No. 96-1099-CR, unpublished slip op. (WI App Dec. 12, 1996). Pursuant to WIS. STAT. RULE 809.23(3), unpublished opinions issued before July 1, 2009, may not be cited. Consequently, we reject Humphrey's reliance here on *Altenburg*.

¶26     Having concluded that there is no error in the jury instructions when viewed as a whole, we turn to Humphrey's arguments of ineffective assistance of counsel, plain error, and a new trial in the interest of justice.[7]  "An erroneous jury instruction warrants reversal only when the error is prejudicial."  *Langlois*, 382 Wis. 2d 414, ¶48.  Consequently, because we conclude that the jury instruction was not erroneous, we necessarily must conclude that Humphrey's claims of ineffective assistance of counsel, plain error, and reversal in the interest of justice that are predicated on an error in the jury instructions must fail.  *See id.* (concluding "that there is no basis" for a defendant's claims of ineffective assistance of counsel, violation of due process, or a new trial in the interest of justice when the jury instruction was not erroneous).  Accordingly, we reject Humphrey's claims, and we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] As a result of our conclusion, we do not address the State's argument that any error in the jury instruction is harmless.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).