COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP454**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023TP5

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO L.R., A PERSON UNDER THE AGE OF 18:

PORTAGE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

 PETITIONER-RESPONDENT,

 V.

W.P.R.,

 RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Portage County: PATRICIA BAKER, Judge. *Affirmed*.

¶1      GRAHAM, J.[1]  W.P.R. appeals the circuit court's order terminating his parental rights to his biological child.  W.P.R. argues that the court erroneously exercised its discretion when it denied his request for new counsel.  I reject W.P.R.'s argument and affirm.

## BACKGROUND

¶2      In March 2023, the Portage County Department of Health and Human Services (the "Department") filed the petition that commenced this involuntary termination of parental rights ("TPR") action against W.P.R.  The Department alleged two grounds for termination:  that the child was in continuing need of protection or services, *see* WIS. STAT. § 48.415(2)(a), and that W.P.R. had failed to assume parental responsibility, *see* § 48.415(6).[2]

¶3      W.P.R. was incarcerated at the time the petition was filed, and he continued to be incarcerated throughout the remainder of the circuit court proceedings.  A state public defender was appointed to represent W.P.R. in April 2023, and she appeared on W.P.R.'s behalf at ensuing hearings, including a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

[2] Involuntary termination of parental rights cases follow a "two-part statutory procedure." ***Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  "In the first, or 'grounds' phase," the petitioner must prove that "one or more of the statutorily enumerated grounds for termination of parental rights exist." ***Id.***; WIS. STAT. § 48.31(1).  If the petitioner proves that grounds exist, the court then proceeds to the second, or "dispositional" phase, in which it decides whether it is in the best interests of the child that the parent's rights be terminated. ***Steven V.***, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

The Department also petitioned to terminate the parental rights of the child's biological mother, and the circuit court ultimately issued an order terminating those rights.  The parental rights of the child's biological mother are not at issue in this appeal.

hearing in May 2023 during which W.P.R. waived his right to a jury trial. The court entered a scheduling order in July 2023.

¶4 The grounds trial was set to begin on October 11, 2023, and the circuit court held a final pretrial hearing on October 3, the week before trial. During that hearing, W.P.R. requested the appointment of new counsel to represent him, and his trial counsel moved to withdraw based on his request. The court indicated that it was "not inclined to grant" the request due to its late timing, and asked counsel to explain what she believed to be the basis for W.P.R.'s request.

¶5 Trial counsel stated that, from her "client's perspective," there was an "irretrievable breakdown in communication." She stated that W.P.R. had demanded that the case "be managed in a specific way … not consistent with the law," that he was "unwilling to recognize" certain legal aspects of the case, and that he had requested that counsel call witnesses that she did not "think would be beneficial."

¶6 The circuit court also asked W.P.R. to speak about his reasons for requesting new counsel, but cautioned that his responses "will be used against" him. W.P.R. stated that "[f]rom the beginning, from the very first phone call," he and trial counsel had been "yelling, screaming at each other." He stated that counsel refused to take certain actions, such as calling "relevant" witnesses or sending him documents. He also stated that counsel was "constantly belittling" him and that she was not representing his interests.

¶7 The circuit court gave trial counsel an opportunity to respond. Counsel did not agree that her conversations with W.P.R. involved "screaming," but she acknowledged that discussing termination of parental rights is "frequently

very frustrating for my clients, and it causes tension." She stated that she had a "legal and ethical obligation" to come up with a trial strategy, and that her strategy was "different than what [W.P.R.] would like."

¶8 The circuit court inquired into the communication between W.P.R. and trial counsel, and counsel stated that she believed there had been "four telephone calls." She noted that communication had been "difficult" due to W.P.R.'s incarceration, and because he had been moved between three different institutions during the proceedings. The court asked whether W.P.R. had received discovery documents, and counsel responded that W.P.R. had not requested discovery.

¶9 After this inquiry, the circuit court denied W.P.R.'s request for new counsel. The court expressed concern that granting W.P.R.'s request would delay the trial until February 2024 "at the earliest," contrary to the "best interests of the child." The court said that W.P.R. and his trial counsel had a "challenging and difficult relationship," and that the conflict stemmed from disagreements about issues such as "specific motions" and "specific witnesses"; however, W.P.R. "need[ed] to get past" his disagreements with her "because her advice is probably spot-on."

¶10 Later during that same hearing, W.P.R. pled no contest to the failure to assume parental responsibility ground for termination. The circuit court then scheduled and held a dispositional hearing, after which it determined that it was in the child's best interest to terminate W.P.R.'s parental rights. W.P.R. appeals.[3]

---

[3] In a TPR appeal, the guardian ad litem must either file a brief or a "statement of reasons for not participating." *See* WIS. STAT. § 809.107(6)(d). The "rights, powers and

(continued)

## DISCUSSION

¶11 The sole issue on appeal is whether the circuit court erroneously exercised its discretion by denying W.P.R.'s request for new counsel. Parents subject to TPR proceedings have the right to be represented by counsel. *See* WIS. STAT. § 48.23(2)(b). The parties here appear to agree that a parent's request for new appointed counsel in a TPR case is governed by the standards applicable to a defendant's request for new appointed counsel in a criminal case.

¶12 "[T]o warrant substitution of appointed counsel, a defendant must show good cause, such as conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *State v. Wanta*, 224 Wis. 2d 679, 703, 592 N.W.2d 645 (Ct. App. 1999) (citing *State v. Robinson*, 145 Wis. 2d 273, 279, 426 N.W.2d 606 (1988)). "Whether counsel should be relieved and a new attorney appointed … is a matter within the [circuit] court's discretion." *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). A circuit court "properly exercises its discretion when it

---

obligations" of the guardian ad litem "do not terminate at the trial level but continue on appeal," and "[t]heir proper performance requires the guardian ad litem to communicate [their] position to this court." *Marotz v. Marotz*, 80 Wis. 2d 477, 488, 259 N.W.2d 524 (1977). Here, the child's guardian ad litem did not file a brief or a statement; however, because the issues raised in this appeal appear to have been fully briefed by W.P.R. and the Department, I decide those issues despite the guardian ad litem's oversight.

Turning to another briefing issue, I note that W.P.R.'s brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended in 2021, *see* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021), because briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for e-filing. As our supreme court explained when it amended the rule, the new pagination requirement ensures that the numbers on each page of a brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. S. CT. ORDER 20-07 cmt. at x1.

examines the relevant facts, applies a proper standard of law and reaches a reasonable conclusion using a demonstrated rational process." *Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of City of Milwaukee*, 161 Wis. 2d 472, 490, 468 N.W.2d 663 (1991).

¶13 When evaluating a circuit court's discretionary decision to deny a request for new counsel, a reviewing court considers factors such as: "(1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Lomax*, 146 Wis. 2d at 359.

¶14 W.P.R. makes arguments regarding each of the three factors articulated in *Lomax*. Because W.P.R.'s arguments about the first factor (the adequacy of the court's inquiry) are related to his arguments about the third factor (whether the conflict likely resulted in a total lack of communication), I address those two factors first, before turning to the second factor (the timeliness of the motion).

### The Circuit Court's Inquiry

¶15 A circuit court "should make a meaningful inquiry" into a party's reasons for requesting new counsel. *Id.*, at 362. This inquiry "may not take more than minutes," *id.*, and need not "satisfy a particular formula," *State v. Kazee*, 146 Wis. 2d 366, 372, 432 N.W.2d 93 (1988). If the party's reasons for the request "are made known, or are apparent," the court need not engage in further inquiry. *Id.*

6

¶16    W.P.R. acknowledges that the circuit court inquired into W.P.R.'s reasons for seeking new counsel, but contends that the inquiry was inadequate because the court "failed to examine and determine whether there was a total breakdown in communication."[4]

¶17    W.P.R.'s argument appears to be, at least in part, that the circuit court should have asked further questions to determine the state of the communication between W.P.R. and his counsel.  W.P.R. alleges just one specific deficiency in the court's inquiry:  he contends that his communication with trial counsel was "objectively minimal," noting that counsel said that they had had four telephone calls, and he contends that the court should have "inquire[d] into the matter further."  However, as noted, counsel explained that aspects of W.P.R.'s incarceration complicated her ability to communicate with him.  In any event, W.P.R.'s complaint was not that counsel failed to communicate with him enough.

---

[4] I note that, had W.P.R. shown that the circuit court's inquiry was inadequate, his remedy would have been a "retrospective hearing" at which the circuit court could revisit the issue and W.P.R. could "fully articulate his reasons for wanting counsel discharged." *See State v. Lomax*, 146 Wis. 2d 356, 365, 432 N.W.2d 89 (1988).  Typically, a party arguing that the circuit court conducted an inadequate inquiry will file a motion in the circuit court asking for postconviction or postdisposition relief before appealing to this court.  *See, e.g.*, *State v. Jones*, 2010 WI 72, ¶17, 326 Wis. 2d 380, 797 N.W.2d 378; *Columbia Cnty. DHHS v. S.A.J.*, No. 2022AP2085, unpublished slip op. ¶12 (WI App Feb. 15, 2024) (parent in TPR proceeding filed a postdisposition motion arguing that the circuit court had failed to conduct an adequate inquiry).

Here, W.P.R. did not make a postdisposition motion before bringing this appeal.  Under the circumstances, it is not immediately apparent that the issue of the adequacy of the circuit court's inquiry has been properly preserved for appeal.  *See* WIS. STAT. § 809.30(2)(h) (before filing a notice of appeal in a TPR case, "the person shall file a motion for … postdisposition relief … unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised"); *see also* *Kenosha Cnty. DCFS v. J.M.C., III*, No. 2023AP1824, unpublished slip op. ¶33 (WI App Mar. 13, 2024) (considered a parent's failure to file a postdisposition motion in this context to be a factor weighing against granting relief).  However, the Department does not argue that W.P.R. should have filed a postdisposition motion, and I address this issue no further.

Rather, the gravamen of W.P.R.'s complaint—confirmed by responses given both by W.P.R. and his counsel—was that the communication revealed certain strategic disagreements that led W.P.R. to believe that counsel was not adequately representing his interests.[5] Once this was known, the court was not required to "engage in needless inquiry" into the amount of communication between W.P.R. and counsel. *Kazee*, 146 Wis. 2d at 372.

¶18 W.P.R. also appears to argue that, as part of its inquiry, the circuit court was required to make an express finding about whether there was a "total lack of communication," and that the court erroneously exercised its discretion by failing to do so. To be sure, *Lomax* calls for an inquiry into the nature of the alleged conflict, and also calls for consideration of whether it is "so great that it likely resulted in a total lack of communication that prevent[s] an adequate defense and frustrate[s] a fair presentation of the case." *Lomax*, 146 Wis. 2d at 359. However, W.P.R. cites no authority for the proposition that the court's inquiry is inadequate unless it expressly determines on the record whether there was a "total lack of communication." Such a requirement would be inconsistent with the principle that the court's inquiry need not "satisfy a particular formula," *Kazee*, 146 Wis. 2d at 372, and with the principle that a reviewing court "may search the record" for reasons to support the circuit court's discretionary decision if the court does not explain its reasoning, *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

---

[5] W.P.R. does not argue that the circuit court erred by asking trial counsel about her understanding of W.P.R.'s reasons for requesting new counsel, or by relying on counsel's answers in making its ruling.

¶19    Regardless, it is apparent from the record that the circuit court determined that there was not "a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case," even though the court did not recite those words verbatim.  As noted, the court ultimately determined that, although his relationship with trial counsel was "challenging" due to disagreements about aspects of the case, W.P.R. needed to "get past" those challenges because counsel's advice was "probably spot-on."  That is, the court determined, in essence, that the conflict between counsel and W.P.R. was not such that it prevented an adequate defense or a fair presentation of the case.

¶20    Accordingly, W.P.R. has not shown that the circuit court's inquiry was inadequate.

**Total Lack of Communication**

¶21    W.P.R. also argues that the facts in the record "easily support a conclusion" that the conflict between W.P.R. and trial counsel was "so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case."  *See Lomax*, 146 Wis. 2d at 359.  W.P.R. does not persuade me that the circuit court erred in determining that this factor did not weigh in favor of granting his request.

¶22    Wisconsin cases are clear that "[m]ere disagreement over trial strategy does not constitute good cause to allow an appointed attorney to withdraw."  *State v. Robinson*, 145 Wis. 2d 273, 278, 426 N.W.2d 606 (Ct. App. 1988).  As noted above, trial counsel characterized the conflict as relating to the fact that the strategy she had devised was "different than what [her] client would like," and W.P.R. confirmed that the conflict related to disputes about issues such as whether to call certain witnesses.  The circuit court determined that the nature

9

of the conflict was disagreements about "motions" and "witnesses"—that is, trial strategy.

¶23    W.P.R. appears to contend that the conflict extended beyond trial strategy.  W.P.R. points to his allegations that he and trial counsel were "yelling, screaming at each other," that she was "constantly belittling" him, and that she was not representing his interests.  However, the circuit court did not have to credit those statements; the court could have instead credited counsel's statements that some "tension" with her clients is common because TPR cases are inherently "difficult" and "frustrating," but that the conflict in this case did not reach the level of "screaming."  W.P.R. contends that "trial counsel herself acknowledged an 'irretrievable breakdown in communication,'" but this misconstrues counsel's statement.  As noted, counsel explicitly qualified this statement by saying that it represented her "client's perspective," and counsel's own perspective was that the disagreements were about strategy.

¶24    There are other facts in the record that would support a determination that W.P.R. and trial counsel were able to communicate effectively, even if they disagreed about certain legal aspects of the case.  As an example, at a hearing approximately a month after counsel was appointed, W.P.R. waived his right to a jury trial.  At that hearing, W.P.R. represented that he had discussed the issue with counsel, and he expressed no issues communicating with her.[6]

---

[6] In explaining its decision to deny W.P.R.'s request for new counsel, the circuit court also took into account its professional impressions of trial counsel.  It noted that counsel had handled "hundreds" of TPR cases, that the court had a "high level of confidence" in her professional abilities based on the court's experiences with her in previous cases, and that W.P.R. "need[ed] to work with her because she's a good attorney … an excellent attorney in the realm of TPR."  W.P.R. does not argue that the court could not rely on these impressions of counsel in crediting her characterization of the conflict.

¶25    Accordingly, W.P.R. has failed to show that the circuit court erred by determining that his conflict with trial counsel was based on disagreements about trial strategy and was not "so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Lomax*, 146 Wis. 2d at 359.

**Timeliness**

¶26    Whether a request for new counsel is timely "depend[s] on the circumstances" before the circuit court. *State v. Jones*, 2010 WI 72, ¶30, 326 Wis. 2d 380, 797 N.W.2d 378. "Eleventh-hour requests are generally frowned upon" as a delay tactic. *Lomax*, 146 Wis. 2d at 361-62.

¶27    W.P.R.'s trial counsel was appointed in April 2023, and W.P.R. did not request new counsel until October 2023, one week before the grounds trial. W.P.R. concedes that the timing of his request for new counsel may be viewed as suspicious, but notes that a request is timely "if it is made when the 'total lack of communication' becomes evident, even though that might be on the eve of trial." *State v. Boyd*, 2011 WI App 25, ¶8, 331 Wis. 2d 697, 797 N.W.2d 546 (citation omitted).

¶28    As noted, during the pretrial hearing, W.P.R. indicated he had been in conflict with his counsel "[f]rom the beginning, from the very first phone call." Yet W.P.R. does not explain why, if the conflict arose at the outset of the representation, he waited until the week before trial to voice his concern. Under the circumstances, the circuit court could have inferred that W.P.R's request was a delay tactic.

¶29    Additionally, in evaluating the timeliness of W.P.R.'s request, the circuit court was entitled to consider interests weighing against delay. *See Lomax*, 146 Wis. 2d at 360 (when a defendant's request for new counsel involves an "associated request for a continuance," the circuit court may balance the defendant's "right to counsel against societal interest in the prompt and efficient administration of justice"). The Department notes that, at the time of W.P.R.'s request, it had filed a witness list and had made preparations to call up to 15 witnesses at the upcoming trial. W.P.R. concedes that granting his request would have resulted in "inconvenience," but contends that any such inconvenience was outweighed by the "gravity of the interest at stake." He notes that "[p]arental rights termination adjudications are among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" *Steven V. v. Kelley H.*, 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶20, 246 Wis. 2d 1, 629 N.W.2d 768).

¶30    A parent's interest in the continued parental relationship is a compelling interest and may weigh in favor of granting a request for new counsel under certain circumstances. However, another compelling interest implicated in TPR proceedings is the child's interest in permanence, which requires "timely decisions about the fitness of parents." *See Waukesha County v. Steven H.*, 2000 WI 28, ¶5, 233 Wis. 2d 344, 607 N.W.2d 607, *modified on other grounds by St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, 368 Wis. 2d 170, 880 N.W.2d 107. Consistent with this principle, continuances in TPR proceedings may be granted only for "good cause" and "only for so long as is necessary." WIS. STAT. § 48.315(2). Here, the circuit court noted that granting the request for new counsel would have delayed the proceeding by at least four months, which was

contrary to the "best interests of the child."  Considering the late timing of the request along with the interests weighing against delay, the court was well within its discretion to determine that W.P.R.'s request was not timely.

¶31    In sum, having considered the factors articulated in *Lomax*, I conclude that the circuit court did not erroneously exercise its discretion by denying W.P.R.'s request for new counsel.[7]

## CONCLUSION

¶32    For all of these reasons, I affirm the circuit court's order terminating W.P.R.'s parental rights to his biological child.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] In support of their arguments, both parties rely on events that occurred after the circuit court denied W.P.R.'s request for new counsel.  For example, W.P.R. notes that he entered a no-contest plea to grounds for termination "[a]lmost immediately" after his request for new counsel was denied, suggesting that he "effectively gave up" after being forced to proceed with an attorney who would not "meaningfully defend" him.  For its part, the Department notes that, during the no-contest plea colloquy, W.P.R. "made multiple statements reflecting his ability" to communicate effectively with trial counsel.  However, my review of the circuit court's decision is "based on the facts and circumstances before it at the time it [made its ruling], not based on events that have not yet occurred." *Dane Cnty. DHS v. J.F.* Nos. 2021AP1868 and 2021AP1869, unpublished slip op. ¶26 (WI App Jan. 13, 2022); *see also Milwaukee Rescue Mission, Inc. v. Redevelopment Auth. of City of Milwaukee*, 161 Wis. 2d 472, 490, 468 N.W.2d 663 (1991) (review of a discretionary decision considers, in part, whether the circuit court reached a reasonable decision based on the relevant facts before it).  Neither party explains why it would be appropriate, under the circumstances, for me to consider events that occurred after the court denied the request, and so I do not consider them.